RIBBENS INTERNATIONAL, S.A. de C.V., a Mexican corporation, Plaintiff.

v.

TRANSPORT INTERNATIONAL POOL, INC., a Pennsylvania Corporation, dba GE Capital Modular Space, Inc., Defendant.

Transport International Pool, Inc., a Pennsylvania Corporation, dba GE Capital Modular Space, Counter-Claimant,

v.

Ribbens International, S.A. de C.V., a Mexican Corporation, Counter-Defendant.

No. EDCV94–0023RT.

United States District Court, C.D. California, Eastern Division.

May 7, 1999.

James Attridge, Shawn, Mann & Steinfeld, L.L.P., San Francisco, CA, Samuel T. Rees, Daar & Newman, Los Angeles, CA, for plaintiff and counter-defendant.

Barbara A. Reeves, Paul, Hastings, Janofsky & Walker, L.L.P., Los Angeles, CA, James F. Elliott, Irell & Manella, L.L.P., Los Angeles, CA, for defendants and counter-claimant.

**PROCEEDINGS: ORDER GRANTING PLAINTIFF RIBBENS INTERNATIONAL, S.A. DE C.V.'S MOTION FOR ATTORNEY'S FEES.**

TIMLIN, District Judge.

The Court, the Honorable Robert J. Timlin, has read and considered plaintiff and counterdefendant Ribbens International, S.A. de C.V. (Ribbens International)'s motion for attorneys' fees, defendant and counterclaimant Transport International Pool, Inc. (TIP)'s opposition thereto, and Ribbens International's reply. The Court will grant the motion, and award attorney's fees in the amount of $140,-400.00 to Ribbens International.

## I.

## BACKGROUND

On October 30, 1998, a jury in this Court found TIP liable for breach of contract to plaintiff Ribbens International and awarded Ribbens International net damages of $351,000. On January 12, 1999, the Court entered judgment against TIP in the amount of $477,888.22, which figure includes prejudgment interest.

The two sales contracts between Ribbens International, as buyer, and TIP, as seller, which the jury found TIP had breached (the agreements) contain the following two provisions, relevant to the instant motion:

> Paragraph 16: Buyer will reimburse seller for any legal fees and costs that become due as a direct result of Buyer's default on this agreement . . . .

> Paragraph 24: This Agreement and Terms and Conditions of Sale shall be construed in accordance with and be governed by the laws of the State of Pennsylvania.

Ribbens International contends that, despite the parties' choice of Pennsylvania law in paragraph 24 of the agreements, the Court should apply California Civil Code section 1717(a) (section 1717(a)) to the nonreciprocal attorney's fees provisions in paragraph 16 of the agreements. Section 1717(a) imposes an obligation of mutuality on such one-way attorney's fees provisions, requiring California courts to award reasonable attorney's fees to any prevailing party in an action involving a contract that specifically provides that only one or the other party could receive attorney's fees in an action relating to that contract. Neither Pennsylvania statutory nor case law imposes a comparable mutuality requirement on such a contractual provision, and, presumably, that state's courts would enforce the one-way attorney's fees clause of paragraph 16 of the agreements as written.[1]

## II.

## ANALYSIS

### A. Legal Standards

Although the Court determined in its March 25, 1996 minute order that Pennsylvania law would govern liability and damages issues with respect to the various contract and tort claims at issue in

---

1. Ribbens International contends that Pennsylvania law is "silent" on this issue of mutuality, and thus that state's law does not actually conflict with the law of California on this point. The Court agrees with TIP that Pennsylvania law provides for recovery of attorney's fees by a party in a contract case in certain, limited situations, which situations do not include a party prevailing in an action involving a contract with a one-way attorney's fees provision running in favor of the other party. *See Aircraft Guar. Corp. v. Strato–Lift, Inc.,* 951 F.Supp. 73, 77 (E.D.Pa.1997) ("Pennsylvania [has] chosen to let contracting parties decide how fees will be allocated in the event of litigation or bear their own expenses in the absence of an agreement to the contrary."); *Egelman o.b.o. Egelman v. Egelman,* 728 A.2d 360 (Pa.Super.Ct.1999) (Pa. C.S.A. § 2503 "provid[es] the general exception to the American Rule" in Pennsylvania); Pa.C.S.A. § 2503 (listing exceptions to American Rule and not imposing mutuality obligation on one-way attorney's fees provisions). Thus, Pennsylvania law, as the Court understands it, is inconsistent with California law with respect to the mutuality issue under consideration.

this action, that ruling does not foreclose further consideration of the choice of law issue with respect to the issue of entitlement to attorney's fees. In fact, under California conflict of law principles, the Court is obligated to conduct a separate choice-of-law analysis as to each issue presented for decision. *See S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.,* 641 F.2d 746 (9th Cir.1981) ("A separate choice-of-law inquiry must be made with respect to each issue in a case."); *Arno v. Club Med Boutique Inc.,* 134 F.3d 1424 (9th Cir.1998) (under California choice of law analysis, separate choice of law analysis required as to liability issues and attorney's fees issues in tort action).

■ Under California law, contractual choice of law provisions are upheld unless the transaction falls under either of the exceptions contained in the Restatement (Second) of Conflict of Laws § 187(2) (section 187(2)). *Nedlloyd Lines B.V. v. Superior Court (Seawinds Ltd.),* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992). Section 187(2) provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

The proper approach in determining whether either of the section 187(2) exceptions apply is for the court to determine whether the chosen state (Pennsylvania) has a substantial relationship to the parties or their transaction or whether there is any other reasonable basis for the parties' choice of law. *Nedlloyd Lines,* 3 Cal.4th at 465–66, 11 Cal.Rptr.2d at 333–34, 834 P.2d 1148. The chosen law will not be applied if neither of these conditions is met.

Alternatively, the court must determine whether California is the state whose law would be applied to the particular issue under the analysis set forth in Restatement (Second) Conflicts of Laws § 188 (section 188) absent an effective choice of law by the parties, and, if so, whether application of Pennsylvania law is contrary to a fundamental policy of California. *Id.* If there is a conflict, the court must then determine whether California has a " 'materially greater interest than the chosen state in the determination of the particular issue . . . .' " *Id.* (quoting section 187(2)). The parties' choice of law will not be enforced if California has a materially greater interest in the relevant issue than the chosen state. *Id. See also Guardian Savings and Loan Ass'n v. MD Associates,* 64 Cal.App.4th 309, 75 Cal.Rptr.2d 151 (1st Dist.1998) (explaining section 187(2) analysis).

## B. Application of Standards

■ There can be no dispute that Pennsylvania, the chosen state, has a substantial relationship to the contracts at issue, because TIP is incorporated in Pennsylvania. *See Nedlloyd Lines,* 3 Cal.4th at 467, 11 Cal.Rptr.2d at 335, 834 P.2d 1148 (" 'A party's incorporation in a state is a contact sufficient to allow the parties to choose that state's law to govern their contract.' ") (quoting *Carlock v. Pillsbury Co.,* 719 F.Supp. 791, 807 (D.Minn.1989)). Accordingly, the Court need not consider whether there is any other reasonable basis for the parties' choice of law and turns directly to the application of subsection (b) of section 187(2), which provides an alternate excep-

tion to recognition of the parties' choice of law.

### 1. Section 188

Section 188 provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in [Restatement (Second) Conflict of Laws § 6].

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract

(c) the place of performance,

(d) the location of the subject matter of the contact,

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided . . . .

Restatement (Second) Conflicts of Laws § 6(2) (section 6(2)) provides in turn that, in the absence of a state statute directing the application of a certain state's law to an issue:

[T]he factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Considering the factors listed in section 188(2) in light of the general principles expressed in section 6(2), the Court concludes that California law would, in the absence of an effective choice of law by the parties, govern the question of Ribbens International's entitlement to attorney's fees under the agreements. Despite the international flavor of the subject matter of this litigation, and despite the fact that neither party is incorporated in California, the contracts at issue concerned the sale of a substantial amount of property that was located in California at the time of sale and involved parties whose business dealings with each other were entirely concentrated in California. Indeed, TIP, at an earlier point in this litigation, argued as follows: "[T]he TIP contracts were negotiated and executed in California; Ribbens viewed the classrooms that were the subject matter of the contract in California; Ribbens made payment to TIP by means of checks drawn on a California Bank; the refurbishment of the units was performed in California; Ribbens was twice invited to inspect the units in California; and final delivery of the refurbished units was 'tendered in the Central District of California.' Moreover, the cost proposals submitted to Ribbens by TIP were 'based on [Ribbens] taking ownership at GE Capital Modular Space Yard' in Rialto, California." TIP's Memorandum of Points and Authorities in Support of [TIP]'s Renewed Motion for Summary Judgment re Qualification To Do Business at 3 (citation omitted).

Neither party argues that Mexican law, the next most likely candidate, should be applied, and the only substantial connection between the agreements underlying this litigation and Pennsylvania is that TIP is incorporated in that state. That factor is of limited importance, however, in light

of the fact that section 188(2)(e) states that the Court should consider both the place of incorporation and the place of business of the parties to a contract, with reference to the particular issue to be decided, in determining which state has the most significant relationship to that issue. In the Court's view, the fact that TIP is incorporated in Pennsylvania is substantially less important, for purposes of the issues under consideration, than the fact that TIP operates significant facilities and conducts substantial business in California. This is particularly true in light of the fact that the instant lawsuit arises directly out of those California business activities.

Finally, with particular respect to the attorney's fees provisions of the agreements, the Court believes that the section 188 analysis leads to application of California law in the absence of an effective choice of law by the parties. The attorney's fees clause contained in paragraph 16 of the agreements is a boilerplate contract term, generically referring to the "buyer" and the "seller." Any such contract term contained in a California contract concerning California merchandise sold by a company doing substantial business in California from a California facility and to be received by the buyer in California is presumptively governed by California law, at least where, as here, no countervailing factors point strongly to another state having a more significant relationship to the issue.

This conclusion is bolstered by the fact that attorney's fees clauses are, to a certain extent, procedural, and have significant effects on access to a state's courts and relations between litigants in those courts and their attorneys. *See Arno,* 134 F.3d at 1425–26 ("doubt[ing]" whether California courts would treat the issue of fees as substantive and observing that "[California] regulates the relationship between the plaintiff and her attorney . . . [and] has an interest in the manner in which [plaintiff's] attorney is compensated"); *Aries v. Palmer Johnson, Inc.,* 153 Ariz. 250, 735 P.2d 1373, 1381 (Ct.App.1987) ("The purpose of [Arizona's attorney's fees statute]

is to mitigate the burden and expense of litigation to establish a just claim or defense. The litigation is occurring in this state and Wisconsin has no interest in whether attorney's fees are or are not recoverable in an Arizona action."). Absent strong indications that another state has a more significant relationship to the particular issue than the forum state, in a case where the forum state is also the state in which the great bulk of the contract-related activity took place, application of the section 188 factors indicates that the forum state's law applicable to the question of entitlement to attorney's fees is the proper law, assuming no effective choice of law by the parties.

### 2. Fundamental Public Policy

■ The Court has no difficulty concluding that section 1717(a) represents the strongly held public policy of California. Indeed, the very text of the statute suggests this conclusion: "Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void." Cal.Civ. Code § 1717(a). This language is mandatory, unavoidable and emphatic. Section 1717(a) is no default provision or gapfiller, subject to override by the parties. Rather, it represents a basic and fundamental policy choice by the state of California that nonreciprocal attorney's fees contractual provisions create reciprocal rights to such fees.

This conclusion finds support in the California courts' discussion of the provision:

It is common knowledge that parties with superior bargaining power, especially in 'adhesion' type contracts, customarily include attorney fee clauses for their own benefit. This places the other contracting party at a distinct disadvantage. Should he lose in litigation, he must pay legal expenses of both sides and even if he wins, he must bear his

own attorney's fees. One-sided attorney's fees clauses can thus be used as instruments of oppression to force settlement of dubious or unmeritorious claims. Section 1717 was obviously designed to remedy this evil.

*Coast Bank,* 19 Cal.App.3d at 596–97, 97 Cal.Rptr. at 39 (citation omitted); *Milman v. Shukhat,* 22 Cal.App.4th 538, 543, 27 Cal.Rptr.2d 526, 529 (1st Dist.1994) ("Section 1717 was enacted in 1968. It is one of several similarly worded statutes which are recognized as being part of an overall legislative policy designed to enable consumers and others who may be in a disadvantageous bargaining position to protect their rights through the judicial process by permitting recovery of attorney's fees in the event they prevail.") (citations and quotations omitted); *see also United States for Use and Benefit of Reed v. Callahan,* 884 F.2d 1180, 1185 (9th Cir. 1989) ("[Section 1717(a) ]'s reciprocity rule converts a one-way attorneys' fees clause into a two-way avenue of opportunity. It creates a reciprocal fees provision no matter how unilateral the wording of the contract.") (citations omitted).

Section 1717(a) constitutes the statutorily expressed public policy of California, and, thus, under California's rules regarding enforcement of contractual choice of law provisions, if California has a materially greater interest in the subject of the litigation than the state chosen by the parties, section 1717(a) will be applied in lieu of the chosen state's law. *See* section 187(2)(b).

**3. Materially Greater Interest**

TIP argues that because both parties to this litigation are commercially sophisticated business entities based outside of California, application of section 1717(a) to the subject agreements would serve no interest of California. The Court disagrees.

As an initial matter, although Pennsylvania has an interest in having its rules concerning attorney's fees contractual provisions applied to its corporate citizen, TIP, California has an equally significant interest in having its rules regarding attorney's fees contractual provisions apply to its corporate resident, TIP. Thus, the Court considers these factors as rough equivalents, which, in a sense, cancel each other out. Yet, aside from the fact that TIP is based in Pennsylvania, that state simply has no particularized interest in the subject agreements, the underlying transactions, or whether or not TIP is obligated to pay attorney's fees to Ribbens International in this action.

California, on the other hand, maintains a weighty and substantial interest in regulating commercial transactions that take place within its borders, and in ensuring access to its courts for all business entities, large and small, who contract in California to buy California produced goods for delivery in California. Furthermore, although California may have a reduced interest in whether or not Ribbens International, a Mexican entity, obtains the benefit of section 1717(a)'s mutuality rule, California does have a significant regulatory interest in applying the rule to its corporate resident, TIP, with respect to TIP's California business transactions. Put more directly, California's interest in offering the protections of its mutuality rule to out-of-state consumers who come to California and buy California products from businesses operating in California is materially greater than Pennsylvania's interest in allowing its "corporate citizen" to freely contract concerning attorney's fees with respect to a breach of a contract involving purchases of California goods and services in California.

Finally, the Court does not believe that Ribbens International's status as a corporate entity removes it from the ambit of section 1717(a)'s mutuality rule. California courts have made clear that the state's contract law policies protect business entities as well as individual consumers. *See A & M Produce Co. v. FMC Corp.,* 135 Cal.App.3d 473, 489–90, 186 Cal.Rptr. 114, 124 (4th Dist.1982) (affording moderately sized business entity the protections of California's unconscionability doctrine and

section 1717(a) when litigating against multinational corporation) ("[E]xperienced but legally unsophisticated businessmen may be unfairly surprised by unconscionable contract terms and ... even large business entities may have relatively little bargaining power, depending on the identity of the other contracting party and the commercial circumstances surrounding the agreement.") (citation omitted). California's interest in applying section 1717(a) to the agreements under consideration here is fully as significant as its interest in applying that statute to agreements involving individual consumers.

#### 4. S.A. Empresa and Telco

TIP relies heavily on two Ninth Circuit cases, *S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746 (9th Cir.1981) and *Telco Leasing Inc. v. Transwestern Title Co.*, 630 F.2d 691 (9th Cir.1980). Neither case is controlling.

*S.A. Empresa* involved litigation arising out of the crash of an airplane near Paris, France. The Boeing Company (Boeing), a Washington state corporation with its principal place of business in that state, had sold the airplane to Seaboard World Airlines (Seaboard), a business entity whose state of incorporation and principal place of business are not mentioned in the opinion. The sales contract contained a choice of law clause indicating that it was to be governed by Washington law. Seaboard then sold the airplane to Varig Airlines (Varig), a Brazilian corporation, through a sale-leaseback contract that was executed in New York and by which Varig assumed certain of Seaboard's obligations under the original sales contract.

After the airplane crashed in France, Varig sued Boeing in federal district court in California. The action was transferred to Washington state, where the district court ultimately granted summary judgment in Boeing's favor. Among the issues on appeal to the Ninth Circuit were several rulings of the district court concerning (1) Boeing's liability for any negligent conduct performed after it had delivered the airplane to Seaboard and (2) the effect of a clause in the original contract of sale between Boeing and Seaboard that purported to exculpate Boeing from tort liability to Varig for any unlawful or fraudulent acts committed concerning the airplane. *Id.* at 747–49.[2]

The Ninth Circuit held, as relevant here, that the parties' choice of Washington law would be given effect by the California courts, even as to issues such as Boeing's attempt to waive tort liability for its unlawful and fraudulent conduct. California had simply no connection to the original sales contract, the second sales contract or any of the parties to the lawsuit. Thus, the Ninth Circuit concluded that Washington's interest in having its law concerning waiver of tort liability applied to its corporate citizen should control. *Id.* at 750–54.

Although the *S.A. Empresa* court stressed that Varig was a foreign corporation and, thus, that California's consumer protection policies would not be impaired if Varig were denied their benefit, the court also observed that "[Varig did not] originally seek the protection of California law." *Id.* at 753.

In the instant case, unlike in *S.A. Empresa*, California has a substantial connection to the underlying commercial transaction, which was negotiated, executed and substantially performed in state. Moreover, Ribbens International, unlike Varig, can be said to have "originally attempt[ed] to invoke the protection of California law" in that Ribbens International came to California to buy merchandise located in California from a company operating substantial facilities in California. *S.A. Empresa* more directly supports Ribbens International's argument.

The second case relied on by plaintiff, *Telco Leasing Inc. v. Transwestern Title*

---

**2.** The Ninth Circuit also considered the issue of Boeing's strict liability in tort under both California and Washington law, but concluded the law on this question in these jurisdictions was identical. The final issue on appeal concerned discovery.

*Co.*, 630 F.2d 691 (9th Cir.1980), involved a suit by an Illinois corporation, Telco Leasing, Inc. (Telco Leasing), against a California corporation, Transwestern Title Co. (Transwestern). Telco Leasing sued Transwestern in Illinois state court, alleging that Transwestern had breached a contract to lease telephone equipment from Telco Leasing. The subject lease agreement contained a choice of law provision calling for the application of Illinois law, and it also contained a one-way attorney's fees provision, stating that Telco Leasing, but not Transwestern, could recover its attorney's fees in an action to enforce the lease. *Id.* at 692–93.

Transwestern removed the action to the federal district court for the Northern District of Illinois, and the action was then transferred to the Northern District of California. The California federal court granted summary judgment in favor of Transwestern, and, relying on the mutuality doctrine embodied in section 1717(a), without objection by Telco Leasing, awarded Transwestern its reasonable attorney's fees. The Ninth Circuit held that application of section 1717(a) was plain error, stating that "[t]hough we view the proper result to be the same had the case originally been filed in the district court in California, there can be no question that the Illinois district court would have applied Illinois law to the issue of attorney's fees." *Id.*

Despite TIP's insistence, *Telco Leasing* does not control this case. Initially, the case was decided under the choice of law rules of Illinois, because the action was transferred to the Northern District of California from the Northern District of Illinois. *See Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Klaxon Co. v. Stentor Elec. Mfg.*

*Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Despite the statement by the Ninth Circuit that the proper result would have been the same had the case been filed in district court in California, the Ninth Circuit did not decide that issue, and, indeed, the court's further statement in dicta that "there can be no question that the Illinois district court would have applied Illinois law to the question of fees" suggests the court's recognition of the forum state's significant interest in the question of fees.

Furthermore, *Telco Leasing* was decided before the California Supreme Court decided *Nedlloyd Lines* in 1992, adopting the analysis in sections 187(2) and 188 for purposes of determining the enforceability of contractual choice of law provisions. This decision sharply clarified the required analysis and, in this Court's view, precludes the Court from treating the *Telco Leasing* language as binding.[3]

The Court concludes that *Telco Leasing* does not mandate the application of Pennsylvania law here. The "public policy" references in *Telco Leasing* did not result in a holding that the mutuality rule of section 1717(a) involved no public policy concerns within the meaning of section 187(2) as applied by the California courts, because the only issue presented for decision in *Telco Leasing* was whether the Illinois courts would apply Illinois law, as chosen by the parties, to an action brought by an Illinois plaintiff in an Illinois court. Application of Illinois law by an Illinois court necessarily could not violate the public policy of Illinois.

Although the "public policy" language, when read in conjunction with the statement that the court "view[ed] the proper result to be the same" if the action had

---

**3.** Most troubling to this Court is the Ninth Circuit's statement in *Telco Leasing* that, under Illinois choice of law rules, "[i]n the absence of public policy considerations, which do not appear to be present here, [contractual choice of law] provisions are enforced." *Id.* at 693. TIP persuasively argues that this statement amounts to a determination by the Ninth Circuit that section 1717(a) presents no public policy considerations sufficient to override application of the parties' chosen law with respect to the issue of entitlement to attorney's fees in breach of contract actions. For the reasons stated in the text, the Court considers the comment to be further dicta.

been originally filed in California, does amount to dicta stating that the California courts would not refuse on public policy grounds to enforce the parties' choice of law and apply the Illinois rule in lieu of section 1717(a), the Court does not find this dicta controlling or persuasive in light of the California Supreme Court's repeated emphasis on the public policy nature of the mutuality rule. *See, e.g., Trope v. Katz,* 11 Cal.4th 274, 286–87, 45 Cal. Rptr.2d 241, 249–50, 902 P.2d 259 (1995) ("[Section 1717(a) ] was designed to establish mutuality of remedy when a contractual provision makes recovery of attorney fees available to only one party and to prevent the oppressive use of one-sided attorney fee provisions.") (holding that a lawyer who was a pro per litigant could not recover fees based on the text of section 1717(a) and in light of the policy implications of a contrary holding—"Our Legislature is not alone in its recognition of the impropriety of such disparate treatment; courts of our sister states have also recognized the unfairness of such discrimination."); *Hsu v. Abbara,* 9 Cal.4th 863, 870–71, 39 Cal.Rptr.2d 824, 828–29, 891 P.2d 804 (1995) (discussing policy rationale behind section 1717(a)).

Accordingly, the Court concludes that application of the law of Pennsylvania to the question of enforcement of the one-way attorney's fees clauses contained in the agreements between Ribbens International and TIP would be contrary to the fundamental public policy of California, and further concludes that California has a materially greater interest in this question than does Pennsylvania, for the reasons earlier stated. Consequently, pursuant to the analysis required by *Nedlloyd Lines,* incorporating into California law section 187(2) of the Restatement (Second) of the Conflict of Laws, the Court will grant Ribbens International's motion for attorney's fees by applying section 1717(a). The Court finds Ribbens International to be the prevailing party by reason of the judgment in its favor against TIP on the contract action alleged in the complaint.

## C. Amount of Fees

Ribbens International requests attorney's fees in the amount of $257,587.08. TIP opposes the requested amount on only one basis: that no evidence is provided by Ribbens International to support the $98,-290.84 requested for work performed by attorney Samuel T. Rees (Rees). Although the Rees declaration documenting the work performed by him and his associates contains a proof of service form indicating it was served by mail on TIP on January 28, 1999, TIP states that no evidence was supplied to it in support of the fees requested for this work. The Court, without deciding the issue or ascribing fault to any party, assumes from TIP's statement that TIP somehow did not receive the declaration. In any event, because "[r]easonable attorney's fees shall be fixed by the Court," the Court will independently consider the reasonableness of the amount requested on behalf of work performed by Rees and Attridge as itemized in the supporting documentation. *See United States Fidelity and Guaranty Co. v. Superior Court (May),* 204 Cal.App.3d 1513, 1530, 252 Cal.Rptr. 320, 330 (4th Dist.1988) ("Attorney's fees are not like the usual item of damages; it is for the court, which is the best judge of the value of professional services to determine what would be a reasonable amount.").

Ribbens International's attorney's fee request has two components. First, Ribbens International requests $98,290.84 for services performed by Rees, his associates and paralegals on this case pursuant to an hourly-billing retainer agreement. Attorney Rees was lead counsel for Ribbens International from October 1993 through June 1995, and resumed providing legal services to Ribbens International on September 6, 1998. Second, Ribbens International requests $159,296.24 to compensate attorney James Attridge (Attridge) for his work on this case performed pursuant to a contingency fee agreement by which he is entitled to one-third of Ribbens International's total recovery in this case. Attor-

ney Attridge was Ribbens International's lead counsel on this case from June 1995 through trial, and tried the case himself.

■ The Court finds that the Rees declaration is deficient in that it improperly includes compound interest in the requested fee amount and intermingles costs items with fees items in a manner that makes it extremely difficult for the Court to separate out the reasonable fee amount. Nonetheless, the declaration carefully documents a substantial amount of work performed on this matter by attorney Rees, his associates and paralegals.

■ As mentioned, the Attridge · declaration does establish attorney Attridge's entitlement to payment by Ribbens International of a contingency fee amounting to one-third the total recovery in this action. However, while "a contingency fee agreement 'is some evidence of the value of an attorney's services ... as with other items of evidence, it is not controlling.'" *San Dieguito Partnership, L.P. v. San Dieguito River Valley Regional Open Space Park Joint Powers Authority,* 61 Cal.App.4th 910, 919, 72 Cal.Rptr.2d 91, 95 (1998) (quoting *Vella v. Hudgins,* 151 Cal.App.3d 515, 521, 198 Cal.Rptr. 725, 729 (1984)); *see also Glendora Community Redevelopment Agency v. Demeter,* 155 Cal.App.3d 465, 469–74, 202 Cal.Rptr. 389, 392–95 (2d Dist.1984) ("[W]hile a trial court, in the exercise of its discretion, is not bound by the terms of a[ contingency fee] attorney fee contract, it should nevertheless, consider those terms and even award attorney fees in the same amount as would be called for by the terms thereof so long as other factors also bearing on reasonableness are considered as well.") (other factors include, but are not limited to, "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee

customarily charged in this locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the circumstances; and (6) the experience, reputation, and ability of the lawyer or lawyers performing the services").

■ Unfortunately, attorney Attridge states that he has not recorded the hours he has expended on this matter over the past four years. This failure has greatly increased the burden imposed on the Court in determining the reasonableness of the requested fees, because "[t]he starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case.'" *Serrano v. Priest,* 20 Cal.3d 25, 49 n. 23, 141 Cal.Rptr. 315, 328 n. 23, 569 P.2d 1303 (1977) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir.1974)).

Nonetheless, the Court is exhaustively familiar with the scope, history and complexity of this litigation, as well as with the time necessarily expended by the various attorneys involved. In addition, the Court has closely observed the performance of Ribbens International's attorneys during the long pendency of this action, and is fully aware of the degree of success achieved on its claims by Ribbens International.

This action has been proceeding in either the Southern or Eastern Division of this Court since February 1994. All aspects of the case were hotly contested, motion practice was extensive and complex and involved numerous dispositive motions.[4] The great bulk of the issues litigated were decided under Pennsylvania law, and a significant number of the relevant events took place in a foreign country and were originally transacted in a foreign language. In addition, the jury trial in

---

4. *See, e.g.,* Minute Order dated March 25, 1996 (cautioning TIP against evading the page limitations contained in Local Rule 3.10

by filing three separate summary judgment motions within a 29 day span).

this matter lasted 15 days, spread over a period of one month. Post-trial motion practice has been extensive and complex, involving multiple ex parte applications, resulting in two prior published opinions and other rulings by this Court. Finally, Ribbens International was skillfully represented by its attorneys, and achieved a significant degree of success on its claims.

After due consideration of the above circumstances, and having also looked for guidance to the 12 factors to be considered in awarding reasonable attorney's fees under federal law, which factors are enumerated in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir.1975); *see also Trevino v. Gates,* 99 F.3d 911, 924–25 (9th Cir. 1996) (discussing application of *Kerr* factors), the Court concludes that reasonable attorney's fees for all the work performed by all of Ribbens International's attorneys on this matter is approximately 40% of that portion of the judgment amount not including prejudgment interest—*i.e.* $357,-000—in favor of Ribbens International against TIP, amounting to $140,400.00 [5]

## III.

## DISPOSITION

ACCORDINGLY, IT IS ORDERED THAT:

1.  Plaintiff Ribbens International, S.A. de C.V.'s motion for attorney's fees is granted.

2.  Defendant Transport International Pool, Inc. shall pay to plaintiff Ribbens International the amount of $140,400.00 as attorney's fees for the services of its attorneys in this action.

---

**5.** The two-fifths amount of $140,400.00 suggests a total of 624 hours worked at $225/hour, the hourly amount charged by attorneys Rees and Attridge. Given the extensive and intensive litigation time expended by Ribbens International's attorneys in this action, the Court views the amount awarded as reasonable.