[No. E035228. Fourth Dist., Div. Two. Jan. 31, 2005.]

ABF CAPITAL CORPORATION, Plaintiff and Respondent, v.
GROVE PROPERTIES COMPANY et al., Defendants and Appellants.

**COUNSEL**

Green & Hall, Dennis B. Luckman and Colin C. Holley for Defendants and Appellants.

Brian J. Jacobs for Plaintiff and Respondent.

**OPINION**

**WARD, J.**—Plaintiff and respondent ABF Capital Corporation (plaintiff) sued defendants and appellants Grove Properties Company (Grove) and Thomas A. Day (collectively, defendants) for alleged breach of contract, of which plaintiff claimed to be a third party beneficiary. The trial court sustained defendants' demurrer without leave to amend and entered judgment in favor of defendants. The court denied defendants' motion for contractual attorney fees, however; defendants now appeal the order denying an award of attorney fees.

For the reasons set forth below, we shall reverse the court's order denying attorney fees.

## FACTS AND PROCEDURAL HISTORY

Plaintiff is a Delaware corporation with its principal place of business in New York. Defendant Grove is a California general partnership; defendant Day is a California citizen. In 1982, defendants bought units in a limited partnership offered by Oak Energy Partners; the limited partnership was in the business of operating oil and gas properties in Texas and Oklahoma. The

Oak Energy Partners limited partnership entered into some subleases with plaintiff; the limited partnership was to pay "Minimum Annual Royalties" to plaintiff for these subleases.

Defendants entered into an "Assumption of Liabilities" contract with Oak Energy Partners, under which they agreed to "unconditionally assume[] primary personal liability . . . to pay . . . that amount of any Minimum Annual Royalty payable during the first two years of [three specified subleases] which [plaintiff (i.e., ABF)] shall elect to defer pursuant to [the contract]."

Plaintiff argued that it was an intended third party beneficiary of the "Assumption of Liabilities" contract between defendants and Oak Energy Partners. The "Assumption of Liabilities" contract also contained two specific provisions which are germane to our consideration: a choice-of-law provision and an attorney fees provision.

First, as to choice of law:

"10. Governing Law. This Agreement is governed by and construed under the laws of the State of New York."

Second, the contract contained a provision which obligated defendants, but not Oak Energy Properties, to pay attorney fees:

"8. Attorneys' Fees. The Partner [defendants (i.e., Grove)] agrees to pay reasonable attorneys' fees and all other costs and expenses which may be incurred by the Partnership or Sublessor [plaintiff (ABF)] in the enforcement of this Agreement wherein it is decided or adjudicated that the Partner has breached this Agreement."

Plaintiff filed this action in California, alleging that defendants had breached the "Assumption of Liabilities" contract, in violation of a duty to plaintiff as third party beneficiary of that contract.

Defendants demurred to the first amended complaint, asserting that plaintiff had failed to "plead around" the New York statute of limitations for bringing the action. The trial court sustained the demurrer without leave to amend. The trial court had found, first, that the choice-of-law provision was valid, and that it must look to New York law in construing the contract. The court determined, second, that the first amended complaint was time-barred under New York law. Following this ruling, the parties asked the court to dismiss the action, so as to facilitate an appeal. Notice of judgment in favor of defendants was served on August 7, 2003.

Thereafter, defendants moved for an award of attorney fees under the unilateral attorney fees provision contained in the "Assumption of Liabilities" contract, pursuant to California Civil Code section 1717, subdivision (a). Plaintiff opposed the fees motion on the ground that New York law governed construction of the attorney fees provision of the contract; New York law, unlike California law, does not provide for mutuality of a unilateral attorney fees provision contained in a contract.

The trial court denied the motion for attorney fees, refusing effect to California's mutuality provisions.

Defendants have appealed the denial of their attorney fees motion. They contend that, as to the mutuality of attorney fees, California law, and not New York law, should be controlling.

## ANALYSIS

### I. The Appeal Is Proper

Preliminarily, we take up the point raised by plaintiff that the order denying attorney fees is not an appealable order. Plaintiff asserts that no judgment was entered after plaintiff's first amended complaint was dismissed. Therefore, plaintiff urges, the order denying attorney fees is not an "order after judgment," and is therefore not appealable under Code of Civil Procedure section 904.1, subdivision (a)(2).

Plaintiff relies, in support of this contention, on the result of an earlier substantive appeal. Plaintiff appealed the substantive ruling on the New York statute of limitations to this court in case No. E034984.[1] On February 3,

---

[1] On the court's own motion, we judicially notice our file in appeal No. E034984. Our judicial notice of our own file obviates the need to take judicial notice of the documents appearing both in that file and in plaintiff's request for judicial notice. In addition, plaintiff's motion to take judicial notice of New York cases is inappropriate because it is unnecessary. Accordingly, we deny plaintiff's motion for judicial notice.

We nonetheless recognize the precedential value of the cited New York cases in establishing that, under New York law, a unilateral attorney fees provision is enforceable, and New York law contains no reciprocity provision equivalent to California Civil Code, section 1717. (See, e.g., *Hooper Assoc. v. AGS Computers* (1989) 74 N.Y.2d 487 [548 N.E.2d 903, 549 N.Y.S.2d 365, 366] [under New York law, a "prevailing party" cannot collect attorney fees from the loser unless such is provided by contract]; *Mighty Midgets, Inc. v. Centennial Ins. Co.* (1979) 47 N.Y.2d 12 [389 N.E.2d 1080, 416 N.Y.S.2d 559, 564] [New York applies American rule, not allowing attorney fees as an element of damage; New York fundamental policy is "pay your own" so as not to discourage access to courts, unless specially provided by contract]; *Baker v. Health Management Systems, Inc.* (2002) 98 N.Y.2d 80 [772 N.E.2d 1099, 745 N.Y.S.2d 741, 746] [same]; *56th Street Swim and Health Club, Inc. v. 350 West 57th Street Co.* (1988) 145 A.D.2d 311 [534 N.Y.S.2d 978, 979] [contract provision in a settlement agreement, allowing

2004, we dismissed plaintiff's appeal without prejudice, on the ground that plaintiff had failed to provide a sufficient record to establish an appealable judgment. Plaintiff now urges that our order in the earlier appeal is "law of the case," precluding defendants from showing that their appeal from the attorney fees order is an appealable "order after judgment."

■ "The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal . . . , and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular.' [Citations.]" (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892–893 [12 Cal.Rptr.2d 728, 838 P.2d 250].) The order dismissing the earlier appeal was not an opinion, and it was not based upon a principle necessary to the substantive resolution of this case. It was certainly not determinative of the issue whether a different, appealable, judgment or order had been or could be entered.

Notably, in the earlier appeal, plaintiff had presented only a minute order, dated July 31, 2003, indicating that the demurrer to the first amended complaint had been sustained without leave to amend. Because an order sustaining a demurrer without leave to amend is not an appealable order, we quite naturally dismissed the appeal. Our dismissal order did, nevertheless, afford plaintiff the opportunity to reinstate its appeal upon supplying further documentation establishing that an appealable order or judgment had been entered. Plaintiff failed to do so. Plaintiff's failure to provide additional documentation to substantiate its appeal does not, however, establish as "law of the case" that such documentation did not or could not exist. Rather, our order fully recognized that a final judgment or an order of dismissal might well have been entered.

Here, defendants have included items which were absent from the record in the earlier appeal. For example, the reporter's transcript of the hearing on the demurrer expressly shows that *plaintiff's attorney* requested entry of judgment: "But actually, to expedite the matter, I would ask that you *enter*

---

for legal fees connected with indemnification, is narrowly construed, and does not apply to allow fees incurred in opposing motion to set aside the settlement agreement containing the fees clause]; *Lipton v. Specter* (1983) 96 A.D.2d 549 [465 N.Y.S.2d 59, 60] [express attorney fee provision in promissory note on second mortgage, allowing fees to collect overdue payments, was construed narrowly not to allow fees incurred for foreclosure]; *Rosano's Farm Store, Inc. v. International Collection Service, Inc.* (1985) 115 A.D.2d 195 [495 N.Y.S.2d 264, 265] [a contract providing that one party may recover fees does not support the claim by the opposing party that the clause should run in its favor (in dictum)].)

*judgment of dismissal so it becomes appealable.*" (Italics added.) The court acquiesced, saying it was "*So ordered.*" (Italics added.)

The record here contains more information on the issue of appealability than did the record in the earlier appeal. On the face of things, it is not entirely clear that a proper judgment has in fact been omitted altogether from the trial record. Indeed, in contrast to the earlier substantive appeal, the indicia are to the contrary. Plaintiff requested that judgment be entered, and the court ordered the same to be done. At first blush, therefore, the appellate record here shows that judgment had been properly ordered, and we generally assume that official duties are regularly performed. (See Evid. Code, § 664.) We could not, at least initially, simply presume that there was no judgment, but only that the judgment itself had not been produced in the appellate record. The requisite judgment had been duly ordered, and there should have been no impediment to obtaining a proper judgment.

At this juncture, however, defendants have failed to produce an actual judgment, even after the omission has been brought to their attention. As the prevailing parties at trial, to whom the duty to prepare the judgment would naturally fall, defendants may not have felt compelled to assure the entry of a formal judgment for purposes of *plaintiff's* substantive appeal. We confess that we are somewhat at a loss to understand, however, why defendants have failed to produce a formal judgment for purposes of their own appeal, particularly after the matter has been repeatedly pointed out. Defendants have simply continued to insist either that a judgment *was* entered (although failing to supply any such document) or that one was unnecessary (arguing that the attorney fees order was a final collateral order). The failure to provide a copy of the judgment at this point bespeaks an inability to do so; the inability to do so supports plaintiff's claim that no such document presently exists.

Ordinarily, this court's policy is not to "save" an erroneous appeal from a nonappealable order. (*Shpiller v. Harry C's Redlands* (1993) 13 Cal.App.4th 1177, 1180 [16 Cal.Rptr.2d 814].) Nonetheless, where, as here, it is *clear* that an appealable judgment *should have been rendered*, the appellate court is empowered to order the trial court to enter the judgment nunc pro tunc. The judgment is then treated as entered *when it should have been entered.* (*Coe v. City of Los Angeles* (1994) 24 Cal.App.4th 88, 91 [29 Cal.Rptr.2d 297].) Accordingly, we now order the trial court to do so in this case.

It is also within our power to have ordered defendants, as the appellants, to obtain the omitted judgment. (See *Maria D. v. Westec Residential Security Inc.* (2000) 85 Cal.App.4th 125, 129, fn. 1 [102 Cal.Rptr.2d 326].) At this

time, however, it would cause undue delay to require them to obtain the judgment; therefore we hereby order the trial court to enter the judgment of dismissal, nunc pro tunc to July 31, 2003. A nunc pro tunc judgment is deemed entered as of the date it should have been entered; consequently, the attorney fees order may then properly be treated as an order after judgment, and is therefore appealable.

## II. The Court Erred in Denying Attorney Fees

### A. *Contentions of the Parties*

Plaintiff urges that the trial court correctly denied defendants' motion for attorney fees. Plaintiff reasons, as did the trial court, that the court had already found valid the choice-of-law provision. Thus, New York law should apply. The positive law of New York would enforce a unilateral attorney fees provision. Therefore, because the contract failed to impose any obligation on plaintiff to pay attorney fees, the court properly denied defendants' motion for such fees.

Plaintiff further contends, and the trial court agreed, that *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1091 [95 Cal.Rptr.2d 198, 997 P.2d 511] demonstrates that denying application of California's Civil Code section 1717 subdivision (a), the reciprocal attorney fees provision, does not contravene any fundamental public policy of California, because defendant Grove, a business entity, is not within the class of persons intended to benefit from the law.

Defendants maintain, however, that under proper choice-of-law doctrine, the law of California applies to the question of entitlement to attorney fees, and that the fundamental public policy of California indeed does mandate reciprocal treatment of a unilateral contractual attorney fees provision.

■ We agree with defendants that Civil Code section 1717, subdivision (a) reflects a fundamental public policy of this state, which is applicable to the contract at issue. *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084 was therefore in error on this point. In particular, the *PLCM Group* court erred in holding that business entities are not within the class of persons affected by Civil Code section 1717, subdivision (a). In this regard, we find the decision of the federal district court in *Ribbens International, S.A. v. Transport International Pool, Inc.* (C.D.Cal. 1999) 47 F.Supp.2d 1117 more persuasive on the issue of the intended reach of Civil Code section 1717, subdivision (a).

■ The question whether California law should apply is, however, an issue in its own right. As plaintiff points out, several California cases have

simply passed over this distinct analytical question. We agree with plaintiff that the proper determination of choice-of-law questions requires the court to include all the relevant steps in its analysis. Ultimately, our examination of the relevant criteria leads us to agree with defendants that California law does apply.

### B. *Principles of Choice-of-Law Analysis*

■ Generally, California "follows a 'governmental interests' approach to choice of laws questions." (*Janzen v. Workers' Comp. Appeals Bd.* (1997) 61 Cal.App.4th 109, 115, fn. 3 [71 Cal.Rptr.2d 260].) Two different strands of this analysis are applied, depending upon whether the parties have included a choice-of-law provision in the contract.

### 1. *When No Choice-of-law Provision is in the Contract*

If there is no contractual choice-of-law provision, and California is the forum state, California employs a three-step examination to determine which law to apply: " ' "[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event [that party] must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." ' [Citations.] . . . the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California. . . . [I]f the relevant laws of each state are identical, there is no problem and the trial court may find California law applicable to class claims. [Citations.] [¶] If, however, the trial court finds the laws are materially different, it must proceed to the second step and determine what interest, if any, each state has in having its own law applied to the case. [Citation.] Despite materially different laws, 'there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied. [Citations.] [¶] Only if the trial court determines that the laws are materially different *and* that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied. [Citations.] In making this comparative impairment analysis, the trial court must determine 'the relative commitment of the respective states to the laws involved' and consider 'the history and current status of the states' laws' and 'the function and purpose of those laws.' [Citation.] These rules apply whether the dispute arises out of contract or tort [citations], and a separate conflict of laws inquiry must be made with respect to each issue in the case [citations]." (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 919–920 [103 Cal.Rptr.2d 320, 15 P.3d 1071].)

### 2. *When a Choice-of-law Provision Is Included in the Contract*

■ In *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464–465 [11 Cal.Rptr.2d 330, 834 P.2d 1148], the California Supreme Court explained that, when a bargained-for choice-of-law provision has been included in the contract, California applies a somewhat different analytical process, under the Restatement Second of Conflict of Laws (Restatement), section 187. (See also *Washington Mutual Bank v. Superior Court, supra*, 24 Cal.4th at pp. 914–915.)

■ "Restatement section 187 subdivision (2) provides: 'The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.'

■ "As summarized in the *Nedlloyd* decision, the analytical approach adopted by Restatement section 187 requires 'the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue . . . ." [Citation.]' (*Nedlloyd Lines B.V. v. Superior Court, supra*, 3 Cal.4th at p. 466, fns. omitted.)" (*Guardian Savings & Loan Assn. v. MD Associates* (1998) 64 Cal.App.4th 309, 316–317 [75 Cal.Rptr.2d 151].)

### C. *Applying the Nedlloyd/Restatement Analysis*

Here, of course, the contract did include an express choice-of-law provision. We therefore undertake the Restatement analysis, as explained by the California Supreme Court in *Nedlloyd Lines B.V. v. Superior Court, supra*, 3 Cal.4th 459.

1. *New York Has a Substantial Relationship to the Parties or Transaction*

The express choice-of-law provision in the contract elected to apply and to construe the contract under New York law.

Under the initial inquiry outlined in *Nedlloyd*, there can be little doubt that New York has a sufficient connection to the contract and the parties to meet the "substantial relationship" test under *Nedlloyd*. Plaintiff, although a Delaware corporation, nonetheless has its principal place of business in New York. The limited partnership which defendants joined was a New York partnership.

2. *Civil Code Section 1717 Represents a Fundamental Policy of California*

We turn to the next part of the *Nedlloyd* analysis: whether the New York law on the issue is contrary to a fundamental public policy of California, " 'in the determination of the particular issue.' " (*Nedlloyd Lines B.V. v. Superior Court, supra,* 3 Cal.4th at p. 466) The "particular issue" to be determined is the reciprocity of attorney fees clauses, a very narrow issue indeed.

 California does have a fundamental policy concerning the reciprocity of attorney fee provisions in contracts. Civil Code section 1717, subdivision (a) expressly provides that, "Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void." (Civ. Code., § 1717, subd. (a).) As the court stated in *Ribbens Intern., S.A. v. Transport Intern. Pool, supra,* 47 F.Supp.2d 1117, "This language is mandatory, unavoidable and emphatic. Section 1717(a) is no default provision or gapfiller, subject to override by the parties. Rather, it represents a basic and fundamental policy choice by the state of California that nonreciprocal attorney's fees contractual provisions create reciprocal rights to such fees. [¶] . . . [¶]

 "Section 1717(a) constitutes the statutorily expressed public policy of California, and, thus, under California's rules regarding enforcement of contractual choice of law provisions, if California has a materially greater interest in the subject of the litigation than the state chosen by the parties, section 1717(a) will be applied in lieu of the chosen state's law. . . ." (*Ribbens Intern., S.A. v. Transport Intern. Pool, supra,* 47 F.Supp.2d at pp. 1122–1123.)

Plaintiff urges that there is no such fundamental public policy, or, more precisely, that the public policy supporting Civil Code section 1717, subdivision (a), does not run in favor of a business entity such as defendant Grove.

Plaintiff relies on *PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th 1084, for the proposition that Civil Code section 1717 was " 'designed to enable *consumers and others who may be in a disadvantageous bargaining position* to protect their rights through the judicial process by permitting recovery of attorney's fees incurred in litigation in the event they prevail.' [Citations.]" (*PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1091, italics added.) Emphasizing this rationale, plaintiff also points to the *PLCM* court's citation of the Legislative Counsel's Enrolled Bill Memorandum on Assembly Bill No. 563 (1968 Reg. Sess.) dated June 5, 1968, at page 1, reporting to the Governor that, " 'The bill is intended to protect persons of limited means who sign contracts with those in a superior bargaining position.' " (*PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1091, italics omitted.) In essence, therefore, plaintiff argues that Civil Code section 1717 should not operate in favor of a sophisticated or corporate business entity.

 We reject this notion. A party's "status as a corporate entity [does not] remove[] it from the ambit of section 1717(a)'s mutuality rule. California courts have made clear that the state's contract law policies protect business entities as well as individual consumers. *See A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 489–90 [186 Cal.Rptr. 114, 124] (4th Dist. 1982) (affording moderately sized business entity the protections of California's unconscionability doctrine and section 1717(a) when litigating against multi-national corporation) ('[E]xperienced but legally unsophisticated businessmen may be unfairly surprised by unconscionable contract terms and . . . even large business entities may have relatively little bargaining power, depending on the identity of the other contracting party and the commercial circumstances surrounding the agreement.') (citation omitted). California's interest in applying section 1717(a) to the agreements under consideration here is fully as significant as its interest in applying that statute to agreements involving individual consumers." (*Ribbens Intern., S.A. v. Transport Intern. Pool, supra*, 47 F.Supp.2d at pp. 1123–1124.)

Plaintiff next argues that *Ribbens* is inapplicable, because it was decided before *PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th 1084. Thus, plaintiff contends, *Ribbens*'s description of the policy behind Civil Code section 1717 is erroneous, because it conflicts with the statements of the *PLCM* court, described above, to the effect that Civil Code section 1717 was not intended for the benefit of sophisticated business entities. We disagree.

 Civil Code section 1717 is not designed exclusively for the benefit of individuals or unsophisticated, weaker parties to a contract. Rather, it reflects a general policy to prevent one-sided attorney fee provisions. Thus, it promotes certainty, and prevents overreaching both in the negotiation of a contract and in the use of the courts during litigation. " 'One-sided attorney's

fees clauses can . . . be used as instruments of oppression to force settlements of dubious or unmeritorious claims.' " (*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1188 [101 Cal.Rptr.2d 532].) This litigation concern applies, whether the parties are of different or equal bargaining strength in the negotiation of the contract.

■ *PLCM* itself also alluded to the certainty principle in describing the rationale for Civil Code section 1717: "[Section 1717] as amended reflects the legislative purpose 'to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions . . . .' " (*PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1091.) The policy supported by Civil Code section 1717 is the evenhanded enforcement of contractual attorney fee provisions. *Ribbens* is wholly consistent with this policy; that it was decided before *PLCM* does not detract from its applicability.

### 3. *California Has a Materially Greater Interest Than New York in the Subject of the Litigation*

Plaintiff argues that *Ribbens* is inapplicable for a second reason: that its facts are significantly different from those here. Thus, even though California has a fundamental policy embodied in Civil Code section 1717, and this fundamental policy conflicts with New York law on the same subject, the circumstances here, unlike those in *Ribbens*, do not show that California has a materially greater interest in the subject of the litigation, so as to require the application of California law, rather than New York law, to the attorney fees issue. We also reject this contention.

■ Plaintiff points out certain factual distinctions between *Ribbens* and the instant case. *Ribbens* did involve a California contract to buy and sell goods in California. Here, by contrast, the transaction was a New York partnership agreement to be performed (payment rendered) in New York, and concerned oil and gas operations in Oklahoma and Texas. Nonetheless, in both cases, the party choosing the litigation availed itself of California courts. Fair access to California courts is a significant part of the policy underlying Civil Code section 1717. (*Ribbens Intern., S.A. v. Transport Intern. Pool, supra*, 47 F.Supp.2d at p. 1123.)

■ In *Ribbens*, the court acknowledged that California might have had a reduced interest in securing to Ribbens, a Mexican corporation, the benefits of the mutuality provision. Ribbens was the party seeking fees. The court also noted, however, that, "*California does have a significant regulatory interest in applying the rule to its corporate resident*," i.e., Transport International Pool, the defending party which conducted substantial business in California. (*Ribbens Intern., S.A. v. Transport Intern. Pool, supra*, 47 F.Supp.2d at p. 1123, italics added.)

Here, plaintiff sued California residents in California. The interest of California in seeing its residents receive fair play with respect to attorney fees, when resort is made to the California courts, is a fundamental equitable policy of this state. Because resort is made to the California courts, and implicates the equitable treatment of California citizens, California has a great material interest in the attorney fees issue—fees which are attributable to litigation in California. The litigation was no doubt brought in California because the defendants are California residents; California has a materially greater interest in enforcing the equitable rules governing access to its courts—including the reciprocal attorney fees rule—than New York has in assuring the enforcement of New York law concerning attorney fees, when those attorney fees are not incurred as a result of any use of New York courts, and have no effect on the accessibility to New York courts.

### 4. *California Law Applies*

To reiterate, subdivision (2) of section 187 of the Restatement Second of Conflict of Laws states: "(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." To this point, we have examined subdivision (2)(a)—the law of the chosen state will be applied *unless* the chosen state has no substantial relationship to the transaction—and two of the three clauses in subdivision (2)(b)—the law of the chosen state will be applied *unless* (i) the chosen state's law would conflict with a fundamental policy of a state which (ii) has a materially greater interest than the chosen state in the determination of the particular issue, *and which* (iii) "under the rule of § 188, *would be the state of the applicable law* in the absence of an effective choice of law by the parties." It is the last point, clause (iii), to which we turn now.

Plaintiff has argued, with some force, that the California decisions following *Nedlloyd Lines B.V. v. Superior Court, supra,* 3 Cal.4th 459, have tended to gloss over this part of the analysis: i.e., whether California law would even apply in the first place, in the absence of an effective choice by the parties. Indeed, *Guardian Savings & Loan Assn. v. MD Associates, supra,* 64 Cal.App.4th 309, to which we adverted in describing California law on the

question, omitted specific analysis of this third clause of section 187, subdivision (2)(b) in its application of *Nedlloyd*, and its explanation of *Nedlloyd's* adoption of the Restatement analysis in cases where a choice-of-law provision has been expressly included in a contract. (*Guardian Savings & Loan Assn. v. MD Associates, supra*, 64 Cal.App.4th at p. 317.)

 Restatement section 188, subdivision (2) states: "(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: [¶] (a) the place of contracting, [¶] (b) the place of negotiation of the contract, [¶] (c) the place of performance, [¶] (d) the location of the subject matter of the contract, and [¶] (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

Plaintiff argues that the section 188 factors suggest that New York law, or possibly another state's law, but not California law, should apply here. Plaintiff asserts that the "place of contracting" is essentially New York, inasmuch as the limited partnership shares were offered by Oak Energy Partners, a New York entity, and the "Assumption of Liabilities" contract with Oak Energy Partners was an adjunct to the limited partnership agreement, providing an alleged third party benefit to plaintiff, pursuant to some subleases which were executed in furtherance of the partnership's business. Defendants signed the agreements and sent them back to New York, where they were accepted by Oak Energy Partners as a New York entity. Plaintiff argues, therefore, that the "place of contracting" should be regarded as New York. The "place of negotiation" of the contract was "everywhere," because the partnerships were offered nationwide. The "place of performance" would be New York, where the payments on the "Assumption of Liabilities" agreement were to be sent; the "location of the subject matter" of the contract would be either New York, where the partnership was administered, or conceivably in Texas and Oklahoma, where the oil and gas explorations—the limited partnership's business—were carried out. The domiciles of the parties were California (defendants), New York (Oak Energy Partners and plaintiff's place of business), and Delaware (plaintiff's place of incorporation). Of the relevant criteria, plaintiff posits, hardly any militate toward application of California law, but most militate in favor of applying New York law.

 We agree entirely with plaintiff that this "step" of the process should not be overlooked, but we disagree with plaintiff's conclusion that California law is not or would not be applicable "in the absence of an effective choice by the parties." (Rest.2d Conf. of Laws, § 187, subd. (2)(b).) Indeed, "in the absence of an effective choice of law by the parties" as an initial proposition, California would normally apply its own "governmental interests" test.

(*Washington Mutual Bank v. Superior Court, supra,* 24 Cal.4th at pp. 919–920.) *That* test begins with applying the law *of the forum state,* i.e., California, unless there is some reason not to. Even if the law of another state is timely invoked, California law might still apply if its interest in the matter is greater than that of the other state. Even if we do not, however, reimport the governmental interests test at this point, but look strictly to the factors listed in Restatement section 188, we must keep in mind that those factors are intended to aid in selecting the law which will be most fair and equitable, which will be in accord with the relevant policies of the forum state, which will accord with the parties' expectations, which will promote the basic policies underlying the particular field of law, which will promote certainty, predictability and uniformity of decision, and so forth. (Rest.2d Conf. of Laws, § 6.)

 Keeping these principles in mind, we conclude that California law applies. The place of contracting appears to be California, where defendants signed and accepted the "Assumption of Liabilities" agreement, and where they mailed their acceptance of that agreement; this was the "last act" needed to give the "Assumption of Liabilities" contract a binding effect, upon Oak Energy Partners's requirement, in furtherance of the partnership activities, that they as partners assume said liabilities. (See *Hardy v. Musicraft Records* (1949) 93 Cal.App.2d 698, 701 [209 P.2d 839] [offer sent from New York to California, acceptance mailed in California; held made in California].) The place of negotiation is equally in California and New York. The place of performance of the contract is arguably New York, the state to which payments under the "Assumption of Liabilities" presumably are made. The location of the subject matter of the contract is New York, and the domiciles of the parties are in California, New York and Delaware. Section 188 also specifically cautions that, "These contacts are to be evaluated according to their relative importance *with respect to the particular issue.*" (Italics added.) Here, of course, the "particular issue" does not deal with the substance of the partnership or its operations, or with the substance of the "Assumption of Liabilities" agreement, but with the procedural question of attorney fees and the reciprocity of attorney fees provisions. Plaintiff has purposely resorted to California as the forum for this litigation; the attorney fees are attributable to California litigation and, as we have seen, California has a fundamental policy interest in protecting its citizens from unfair litigation tactics or procedures, and in ensuring fairness in litigation before its courts. While these considerations are somewhat overlapping of the other factors to be analyzed under section 187, subdivision (2) of the Restatement, it has long been recognized that these analyses *are* somewhat overlapping. (*Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 898 [72 Cal.Rptr.2d 73], citing *Dixon Mobile Homes, Inc. v. Walters* (1975) 48 Cal.App.3d 964, 972 [122 Cal.Rptr. 202], overruled on another point in

*Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815, fn. 18 [148 Cal.Rptr. 22, 582 P.2d 109].) On balance, therefore, given the nature of the provision at issue, and the fundamental policy interests of California as the forum state, we conclude that California law would be the proper choice in the absence of an effective choice of law provision in the contract.

Because all three clauses of section 187, subdivision (2)(b) pertain, the exception (i.e., to utilizing the chosen New York law) is valid, and New York law will not be applied.

### D. *Summary and Conclusion Concerning the Attorney Fees Clause*

Although the parties' contract included a choice-of-law provision, section 187, subdivision (2) describes two exceptions to applying the chosen state's law. Here, California law would apply on the particular issue, in the absence of a valid or effective choice of law by the parties, California has a substantially greater interest in the determination of this particular procedural issue (which concerns the costs of litigation and which concerns a case in which the costs of litigation are incurred in California, by reason of choosing California as the forum state), and the chosen state's law conflicts with a fundamental policy of California law on that particular issue. The elements of one of the exceptions have therefore been met (Rest.2d Conf. of Laws, § 187, subd. (2)(b)), and New York law will not apply.

We agree with plaintiff that a proper, detailed choice-of-law analysis, under *Nedlloyd Lines B.V. v. Superior Court, supra,* 3 Cal.4th 459, and the Restatement, requires some consideration whether the law of the forum state "would be the state of the applicable law in the absence of an effective choice of law by the parties." (Rest.2d Conf. of Laws, § 187, subd. (2)(b).) Other cases have simply assumed that the forum state is such a state, or glossed over that element of the exception to applying the chosen law. Here, the required analysis indicates that California law does apply with respect to the particular issue. We agree with defendants, on the other hand, that *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, incorrectly interpreted the scope of Civil Code section 1717; the fundamental policy underlying Civil Code section 1717—to prevent unfair litigation tactics through one-sided attorney fee provisions—applies to business entities as well as to individuals. For these reasons, the trial court erred in failing to apply California law. Accordingly, the order denying attorney fees must be reversed.

## DISPOSITION

The order denying attorney fees to defendants is reversed. The matter is remanded for the trial court to make a proper award of attorney fees under Civil Code section 1717. Costs are awarded to defendants as the prevailing parties on appeal.

Ramirez, P. J., and Richli, J., concurred.

A petition for a rehearing was denied February 25, 2005, and respondent's petition for review by the Supreme Court was denied April 27, 2005. Kennard, J., was of the opinion that the petition should be granted.