[Civ. No. 15404.   First Dist., Div. Two.   Sept. 4, 1953.]

ROSALIE  NORTON,  Respondent,  v.  CONSOLIDATED
FISHERIES, INC. (a Corporation) et al., Appellants.

Joseph L. Alioto and Walter F. Calcagno for Appellants.

Robert L. Condon and Charles L. Hemmings for Respondent.

GOODELL, J.—Respondent sued as assignee of about 60 commercial fishermen, for the price or value of their salmon catch for the 1949 season. The complaint names all the assignors and specifies the value of the fish delivered by each, aggregating $12,650.40. Judgment was rendered for $11,703.15 with interest and costs, and after the denial of a new trial this appeal was taken.

The answer admits that the reasonable price of the fish delivered to Consolidated at Pittsburg, California, was $12,549.60.

Only two of the assignors testified, namely, Joe and Vince Aiello who denied making any assignment; the court found in their favor and reduced the assignee's claim accordingly. As to all the others the court found in accordance with plaintiff's allegation that before suit each of the fishermen had orally assigned his claim to her and that she was the owner and holder thereof.

Two affirmative defenses were pleaded but the court found "That each and all of the allegations [thereof] except such as are herein expressly found to be true, are untrue."

The first defense was that prior to September 20, 1949, all the fishermen named in the complaint had assigned

all their right, title and interest in their 1949 salmon catch (including fish delivered to Consolidated) "to a special fund managed and controlled by International Fishermen & Allied Workers of America, Local No. 35." It is then alleged that those who assigned to the special fund included fishermen *not named in the complaint,* who owed Consolidated $10,907.87 for gear and netting advanced to them for the 1949 salmon season; further, that all the assignors to the special fund operated as joint venturers under the special fund managed, controlled and directed by Local 35. It concluded with the claim that Consolidated had a valid offset against the special fund for $10,904.87 and that "any subsequent purported oral assignment to plaintiff . . . is null and void and of no effect in law as to this defendant."

The second defense was "that the purported oral assignment to plaintiff was illegal and fraudulent for the purpose of depriving this defendant of exercising its valid claim and offset against the . . . special fund" in that plaintiff was and continued to be secretary-treasurer of Local 35 and "that in form the present action was instituted by plaintiff in her individual capacity, but in substance the present action is being instituted by plaintiff in her representative capacity as secretary-treasurer of . . . 35 and for its benefit." For these reasons the defense claimed that plaintiff and her assignors were estopped from asserting any claims against defendant.

The burden of proving both defenses was, of course, on Consolidated.

With respect to the allegation respecting fishermen *not named in the complaint* who owed $10,907.87, for which an offset was asserted against the assignors who *were* named in the complaint, the defense offered no evidence whatever.

With respect to the charge that plaintiff was suing ostensibly in her individual capacity but in reality on behalf of the union, the defense offered no evidence whatever of its own. When questioned on this point plaintiff testified emphatically that she represented "the people," not the union; that she was no longer its secretary-treasurer, and that, in fact, the union had gone out of business in January, 1951, none of which testimony was contradicted.

With respect to the "special fund," the defense offered no evidence whatever of its own. There is nothing in the record to show the purposes or objects of the fund, or the terms of its creation, or what ultimate disposition was to have been made of it. The first defense pleads that plaintiff's assignors

had "assigned" all their right, title and interest in their 1949 salmon catch to this *fund*; there was no proof of any such *"assignment"* to any *fund* or any union. Whatever the record shows on the subject is found in the testimony of the plaintiff herself, who, in 1949, was secretary-treasurer of Local 35, a union of commercial fishermen at Pittsburg.

From her testimony, which on this subject is uncontradicted, it appears that a written contract was signed prior to August 10, 1949, between the union and the companies, fixing the price for the ensuing 1949 salmon catch at 21 cents a pound. About September 5th the companies announced—despite their contract—that they would pay no more than 19 cents. Each side was unyielding "and the fishermen wouldn't go fishing." There was confusion among the men, and they engaged in a lot of talk, including the suggestion that they might set up their own cooperative fish market. Obviously something had to be done since time and tide do not wait on negotiations. The fishermen selected a committee of eight or nine of their number which apparently negotiated some sort of a makeshift arrangement with Consolidated (and presumably two or three other companies) so that the 60 or so men would go fishing while the fish were still running. They fished from September 20th to 26th and the catch was delivered to Consolidated, as it admits, the committee apparently cooperating with Consolidated concerning the fish and game tags and the handling of the catch.

It is true that during the period of uncertainty and confusion the men discussed among themselves the setting up of a special fund. Plaintiff testified that the men agreed among themselves that the proceeds of the catch would be "set aside and put in a special fund separate and apart from any other fund the union had . . ." She testified that the men later voted to discontinue the fund. "It was sort of hanging in mid-air" as she put it.

We repeat that this "special fund" was injected into the case by the defense for the purpose of asserting a $10,907.87 offset (on which there was a total failure of proof) and Consolidated now seeks to show that it amounted to a prior "assignment" to the *union* which left no choses in action in the fishermen's hands susceptible of (a subsequent) assignment to plaintiff. Since the burden was on the defense of proving this prior "assignment," it had the task of going forward either by pressing the cross-examination of plaintiff or by laying before the court some tangible and definite evi-

dence showing what the fund was all about. ■ The scant and sketchy testimony in this record certainly would not have supported a finding that a prior "assignment" had been made. The most that could be made of· it is some sort of a tentative arrangement among the fishermen themselves, *who were creditors*, to impound the proceeds of their catch for some undisclosed purpose, which arrangement apparently was never carried into execution, but was abandoned. But such internal arrangement, even if perfected, would seem to be of no concern to the persons to whom the catch had been delivered and who, by their own admission, have never paid for it.

In any event it could not be held on this record that there was any "assignment" to the "special fund" as the term "assignment" is used and understood in the law, hence this case presents no problem of successive or conflicting assignments, or priorities. What has been said we think answers appellant's contention that whatever was "assigned" by the fishermen to the "special fund" was never "assigned" back to them.

So much for the two affirmative defenses.

With respect to appellant's contention "that material findings made by the court are contrary to the law and the evidence and the judgment lacks evidentiary support," it must be conceded that the only testimony respecting the oral assignments was that given by the assignee herself which, admittedly, was not as specific as it might have been. But, in the very nature of things oral assignments are never as definite as written ones.

■ Appellant has supplied no authority holding that an assignee is not a competent witness to prove an assignment, and we doubt if such authority can be found. Moreover, "The direct evidence of one witness who is entitled to full credit is sufficient . . ." (Code Civ. Proc., § 1844.) ■ No corroboration is required in a case such as this. (*Radich* v. *Gak*, 61 Cal.App. 375-376 [214 P. 1000].) The trial judge was not required to accept the plaintiff's testimony as true (*Lohman* v. *Lohman*, 29 Cal.2d 144, 149 [173 P.2d 657] ; *Berg* v. *Journeymen's P. & G. F. Union*, 5 Cal.App.2d 582 [42 P.2d 1091]) but the fact remains that he did so.

The case on which appellant chiefly relies is *Gustafson* v. *Stockton etc. R. Co.*, 132 Cal. 619 [64 P. 995], but there the trial court found on the evidence before it that there had been no oral assignment and the judgment for defendant based on such finding was affirmed. Here, on the other hand,

the court with all the facts before it found for the plaintiff, and appellants have produced no authority convincing us that such finding is unsupported.

■ There are circumstances corroborative to some extent of plaintiff's testimony. Almost a year elapsed from the delivery of the fish to the filing of the action, which afforded ample time for the 60-odd fishermen to decide how they wanted to proceed against Consolidated to recover for the fish admittedly delivered, and admittedly worth between $11,000 and $12,000. It also afforded ample time for these numerous assignments to be made orally at various times and places as plaintiff testified. It also afforded ample time for the dissolution of the "special fund," before this action was commenced. The court could readily have concluded from the evidence that the plaintiff was probably the best informed person, and therefore the logical person, to whom the fishermen could intrust the collection of their money, having served as the secretary-treasurer of their union and being thoroughly familiar with all the antecedent controversies and negotiations. Plaintiff testified that Local 35 became nonoperative in January, 1951, which was after the action was commenced, but the court could easily have inferred from this record that the union's activities had slowed down if not come to a complete halt long before the action was actually filed.

■ There can be no doubt that when an alleged assignment is denied the burden of proving it is on the plaintiff. In its closing brief appellant cites the case of *Martin* v. *Going*, 57 Cal.App. 631 [207 P. 935], but that case has no application whatever since there wages were the subject-matter, and the statute (Civ. Code, § 955) expressly required an assignment of wages to be in writing. Compare Civil Code, section 1052.

The answer of Consolidated expressly admits that the reasonable value of the fish which it received was $12,549.60. It raises no issue as to the identity of the persons who did the fishing and delivered the catch. It expressly admits "that no part of the purchase price has been paid." Appellant made no attempt to prove its two special defenses, and it has not convinced us by authority or argument that the evidence was insufficient to support the court's finding that the oral assignments were made.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.