Filed 8/28/14  Fanuk Human Resources v. Cash Flow V CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FANUK HUMAN RESOURCES, INC.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CASH FLOW V, LLC et al.,<br><br>    Defendants and Respondents. | B245415 consolidated with B247581<br><br>(Los Angeles County Super. Ct. No. BC436621) |

        APPEAL from a judgment and postjudgment order of the Superior Court of Los Angeles County, John L. Segal and Joseph R. Kalin, Judges.  Reversed in part and dismissed in part.

        The David Firm, Henry S. David and Dana J. Emmer for Plaintiff and Appellant.

        Wesierski & Zurek, Joseph E. DuBois, Mary H. Kim and Ashley A. Regan for Defendants and Respondents.

——————————————————

Investors of an apartment building in Montgomery County, Alabama obtained a $250,000 loan from Rob D. Walker to renovate the property. Ronald D. and Andria L. Asher are the principals of Cash Flow V, LLC (CFV), one of the investors. The Ashers, on behalf of CFV, purportedly signed a "Mortgage Note" (hereafter, Note) for the Walker loan. The Ashers proved at trial that their signatures on the Note were forged.[1] The Ashers, however, admittedly signed documents entitled "Amendment to Mortgage," and "Amendment to Note" (collectively, Amendments) on behalf of CFV, which state, except for the agreed upon amendments to extend the payment schedule and increase the interest rate, the terms of the Mortgage and Note "are hereby ratified and affirmed."

The principal issue in this appeal is whether CFV (through the Ashers) ratified the Note. Before addressing this issue, we must determine whether plaintiff and appellant Fanuk Human Resources, Inc. (Fanuk) has standing as an assignee to enforce the Note. The trial court concluded Fanuk lacked standing. Assuming Fanuk could enforce the Note, the trial court also concluded CFV did not ratify the Note. We reach the opposite conclusion on both issues: A valid assignment exists, and CFV ratified the Note. Thus, we reverse the judgment in favor of CFV. In light of our conclusion, we also reverse the attorney fees awarded to CFV and the Ashers collectively and remand to the trial court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

This case involves a $250,000 loan from Walker to renovate an apartment building in Montgomery County, Alabama. The property was purchased by CFV and other limited liability companies for $300,000 with no mortgage or encumbrance. The investors received the $250,000, which was deposited into an operating account.

---

[1] The Ashers also proved at trial that their signatures on a document entitled "Continuing Guaranty" were forged. Fanuk does not challenge on appeal the judgment in favor of the Ashers.

2

1. *Note and Continuing Guaranty*

    a. *CFV Proves the Ashers' Signatures on the Note were Forged*

The Walker loan was documented by a Note signed by representatives of several limited liability companies, including the Ashers on behalf of CFV. At trial, the Ashers proved their signatures on the Note had been forged.

Under the terms of the Note, the borrowers agreed to pay monthly, interest only installments commencing on August 1, 2005 through August 1, 2006. The final installment of outstanding principal and interest became due and payable on August 1, 2006.

The Note states at the top "State of Alabama, County of Montgomery," but there is no choice-of-law language in the one-page recitation of terms. The Note provides for reasonable attorney fees, stating: "The drawers and endorsers of this Note . . . agree to pay all costs of collecting or securing or attempting to collect or to secure this Note, including a reasonable attorney's fee."

    b. *The Ashers Prove Their Signatures on the Guaranty were Forged*

In July 2005, the Ashers also purportedly signed a Guaranty. The Ashers proved they did not sign the Guaranty.

The Guaranty has a unilateral attorney fees provision in favor of the lender.

2. *On Behalf of CFV, the Ashers Execute Amendments*

In 2007, the Ashers, on behalf of CFV, signed the Amendments. These documents contain identical terms. The term on the mortgage was extended and the interest rate increased by 2 percent. The document entitled "Amendment to Mortgage" states: "Except as hereinabove expressly amended, the terms of the Mortgage are hereby ratified and affirmed." The document entitled "Amendment to Note" states: "Except as hereinabove expressly amended, the terms of the Note are hereby ratified and affirmed."

3. *Assignment of Note to Fanuk*

Walker, the original lender, was Stephen Olson's business partner. Olson operates Fanuk, a nonprofit organization that provides nutrition and health care services to children in and around Jakarta, Indonesia.

3

Olson testified that in 2008, Walker orally agreed to assign the Note to Fanuk for $280,000 (Oral Assignment). Payments on the Note were made to Olson.

In 2009, Walker and Fanuk signed a written assignment entitled "Bill of Sale and Blanket Assignment Agreement" (2009 Written Assignment). The 2009 Written Assignment states, "in consideration of One Hundred Dollars and 00/100 ($100.00), and other good and valuable consideration, the receipt of which is hereby acknowledged, and intending to be legally bound hereby: [¶] Seller [Walker] by these presents does hereby sell, convey, grant, transfer, assign, and set over, to Purchaser [Fanuk] and his successors and assigns, without recourse, all of Seller's right, title and interest, legal or equitable, in and to the loan identified on Schedule A hereto . . . ." Schedule A lists the $250,000 loan.

The terms of the 2009 Written Assignment are governed by Alabama law.

4. *Default and Action to Enforce the Note and Guaranty*

When the payments ceased on the Note, and the guarantors did not pay under the Guaranty, Fanuk filed suit. The complaint alleged causes of action for breach of the Note and Guaranty, along with a common count for money had and received. The complaint sought compensatory damages in the sum of $289,052.07. Both CFV and the Ashers, as guarantors, were named in the complaint. CFV and the Ashers filed an answer, alleging as an affirmative defense that they did not execute the Note on behalf of CFV or execute the Guaranty.

5. *Judgment in Favor of CFV and the Ashers*

After a two-day bench trial and the submission of closing argument briefs, the trial court issued a statement of decision ruling in favor of CFV and the Ashers and against Fanuk. As noted, the trial court's findings and conclusions of law on the Ashers' liability under the Guaranty are not challenged on appeal.[2]

---

[2] Fanuk also does not challenge the trial court's findings and conclusions of law on the common count for money had and received.

In its statement of decision, the trial court concluded that, although the Ashers signed the Amendments on behalf of CFV, CFV did not ratify the Note. The trial court found the Amendments did not include "ratification language," and the Ashers did not sign the Amendments with " 'full knowledge' of the facts and their rights regarding the [N]ote and the [G]uaranty."

The trial court also concluded that even if the Note had been ratified and was enforceable, Fanuk lacked standing because there was no valid assignment. In support of this conclusion, the trial court cited the contradictory evidence concerning the consideration paid for the Note under the terms of the Oral Assignment and the 2009 Written Assignment, and the lack of evidence regarding the terms of the Oral Assignment.

Judgment was entered in favor of CFV and the Ashers. Fanuk filed a timely notice of appeal.

6. *Attorney Fees Awarded to CFV and the Ashers*

Although the trial court concluded the Guaranty contained a choice-of-law provision selecting Alabama law to govern this dispute, the court applied California law to award attorney fees. In so ruling, the trial court invoked Civil Code section 1717, subdivision (a) and awarded $127,410.25 in attorney fees to CFV and the Ashers. Fanuk filed a timely notice of appeal. We consolidated the appeals.

DISCUSSION

On appeal, Fanuk challenges the trial court's conclusion that it lacked standing to enforce the Note, and CFV did not ratify the Note when the Ashers executed the Amendments on its behalf. If these issues are resolved in Fanuk's favor, it seeks reversal of the attorney fees awarded to CFV and to the Ashers because Alabama law, which it contends governs the Note and Guaranty, does not provide for mutual reciprocity of a unilateral contractual attorney fee provision. Fanuk also challenges the trial court's failure to enter default judgment as to certain defaulting defendants as requested in its closing argument brief. We address these issues in turn.

5

1. *Fanuk has Standing to Enforce the Note Against CFV*

Fanuk contends the trial court erred in concluding that it failed to prove a valid assignment from Walker to enforce the Note. In support of this contention, Fanuk argues that the contradictory evidence cited in the statement of decision, addressing (1) whether the assignment was oral or written, (2) when the parties entered into the assignment, and (3) the amount of consideration paid for the Note does not support the trial court's finding that Fanuk failed to prove a valid assignment. We agree.

    a. *Failure-of-Proof Standard of Review*

CFV urges us to apply the substantial evidence standard to affirm the trial court's conclusion. Applying the semantics of this standard to a failure of proof is problematic. Such a standard would require review of the record to determine if sufficient evidence supports the trial court's determination that the evidence was insufficient. (See *Heap v. General Motors Corp.* (1977) 66 Cal.App.3d 824, 831 [" 'To find *substantial* evidence in support of a finding of *no* evidence draws the reviewing court into a kind of juridical shell game.' " (Italics in original.)].)

When the trial court has concluded that the party with the burden of proof did not carry its burden, and that party appeals, " 'it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. . . . [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)

    b. *Governing Legal Principles Applicable to Contract Assignments*

"An assignment requires very little by way of formalities and is essentially free from substantive restrictions. '[I]n the absence of [a] statute or a contract provision to the contrary, there are no prescribed formalities that must be observed to make an effective

6

assignment. It is sufficient if the assignor has, in some fashion, manifested an intention to make a present transfer of his rights to the assignee.' [Citations.] Generally, interests may be assigned orally [citations], and assignments need not be supported by any consideration [citations]." (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1002; *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 291; see also *Brown v. Patella* (1938) 24 Cal.App.2d 362, 363-364 [oral assignment of a promissory note is valid].) Alabama law is in accord. (E.g., *Baker v. Eufaula Concrete Co., Inc.* (Ala. 1990) 557 So.2d 1228, 1229, 1230 ["There is no requirement that magical words be used to accomplish an assignment, and an assignment may be written, parol, or otherwise. . . . The test . . . is whether the purported assignor intended to transfer a present interest in the subject matter of the contract."]; see also *Atlantic Nat. Trust, LLC v. McNamee* (Ala. 2007) 984 So.2d 375, 378-379 [assignment of lost, destroyed, or stolen promissory note governed by Alabama common law, stating, " '[a] valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses,' such that the assignee 'simply steps into the shoes of the assignor . . . .' [Citation.]"].)

        c. *The Uncontradicted and Unimpeached Evidence of a Valid Assignment*

Fanuk had the burden of proving a valid assignment. (*Cockerell v. Title Ins. & Trust Co.*, *supra*, 42 Cal.2d at p. 292.) "In an action by an assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue . . . but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee [citation]." (*Ibid*.) "In determining whether an assignment has been made, 'the intention of the parties as manifested in the instrument is controlling.' " (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2012) 203 Cal.App.4th 1328, 1335, quoting *National R. Co. v. Metropolitan T. Co.* (1941) 17 Cal.2d 827, 832-833.)

Fanuk admitted into evidence the 2009 Written Assignment. Fanuk's principal also testified that the company bought the Note from Walker in 2008 for $280,000. At

trial, one of the investors testified that payments on the Note were made to Fanuk's principal, not Walker. The testimony of the assignee (*Norton v. Consolidated Fisheries, Inc.* (1953) 120 Cal.App.2d 86, 90), or the admission into evidence of a written assignment (*Marx v. McKinney* (1943) 23 Cal.2d 439, 443) is sufficient to establish an assignment. While Fanuk offers an explanation (not presented at trial) as to why the parties entered into an oral and written assignment, it is immaterial. Sufficient evidence of Walker's intent establishes a valid assignment.

In concluding that Fanuk failed to prove a valid assignment, the trial court focused on the terms of the Oral Assignment and the 2009 Written Assignment, not the intent of the assignor. Walker assigned his rights to enforce the Note to Fanuk orally and at a later date executed and notarized the 2009 Written Assignment. This is sufficient evidence to protect the obligor (CFV) from any further claim by the obligee (Walker).

CFV cites *Cockerell v. Title Ins. & Trust Co.*, *supra*, 42 Cal.2d 284, to support its contention that no valid assignment exists. That case is inapposite. In *Cockerell*, the appellate court held that no assignment had been proven because the parties claiming an assignment relied solely on a written assignment signed by the assignor's alleged agent, and made no showing that the alleged agent was authorized to execute the assignment. (*Id.* at pp. 292-293.) That is not the case here, as the evidence established that Walker himself agreed to the assignment and had authority to do so.

CFV argues, however, that the contradictory evidence of the terms of the oral and written assignment, coupled with the forged signatures on the Note, impeached Fanuk's evidence regarding the validity of the 2009 Written Assignment. We disagree. There is no evidence the 2009 Written Assignment was a sham, or any indication in the record that the trial court's conclusion on the validity of the assignment was a credibility determination based upon CFV's forgery defense.

We also reject CFV's contention that the assignee is Olson, not Fanuk. There is substantial evidence in the record that Walker assigned his rights to enforce the Note to Fanuk, not to Olson. Accordingly, Fanuk's evidence was of such a character and weight

8

as to leave no room for a judicial determination that it was insufficient to support a finding in Fanuk's favor on this issue.[3] Thus, we conclude a valid assignment exists.

Fanuk has standing to enforce the Note as a "nonholder in possession of the instrument who has the rights of a holder." (Cal. U. Com. Code, § 3301.) We, therefore, do not address the related issues of whether Fanuk is a holder in due course with the right to enforce the Note, or whether Fanuk acquired the rights through Walker's transfer of the Note.

2. *CFV Ratified the Note*

Fanuk contends that the trial court erred in concluding that CFV (through the Ashers) did not ratify the Note because the Amendments do not contain ratification language, and the Ashers did not have full knowledge of all material facts when they signed the Amendments on behalf of CFV. Fanuk asks us to conclude that no substantial evidence supports these factual findings.

Substantial evidence is evidence that a rational trier of fact could find to be reasonable, credible, and of solid value. We view the evidence in the light most favorable to the judgment and accept as true all evidence tending to support the judgment. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429; *Mealy v. B-Mobile, Inc.* (2011) 195 Cal.App.4th 1218, 1223.)

a. *Governing Legal Principles of Ratification*

"Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him. [Citations.] A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is

---

[3] The trial court was concerned that Fanuk's complaint sought to enforce the 2009 Written Assignment and did not reference the Oral Assignment. This issue, however, was clearly presented at trial. Accordingly, the failure to amend the pleading is immaterial. (See *Pierce v. Pacific Gas & Electric Co.* (1985) 166 Cal.App.3d 68, 81.)

'inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.' " (*Rakestraw v. Rodrigues* (1972) 8 Cal.3d 67, 73.)

A forged signature "may be ratified even where the forger is not the agent of the purported signer." (See *Common Wealth Ins. Systems, Inc. v. Kersten* (1974) 40 Cal.App.3d 1014, 1024-1026; see also Cal. U. Com. Code, § 3403, subd. (a) ["An unauthorized signature may be ratified for all purposes of this division."].) Alabama's version of the Uniform Commercial Code is in accord. (Ala. Code, § 7-3-403.) Whether there has been ratification of a forged signature is ordinarily a question of fact, as is the question of whether one is estopped to deny the validity of a forged signature. (*Common Wealth Ins. Systems, Inc. v. Kersten*, *supra,* at p. 1026.)

> b. *No Substantial Evidence Exists to Support the Trial Court's Findings*

Here, contrary to the trial court's factual findings, the Amendments specifically contain ratification language, stating: "[e]xcept as hereinabove expressly amended, the terms of the Note are hereby ratified and affirmed."

CFV contends, and the trial court so found, that CFV did not ratify the Note because the Ashers lacked full knowledge of the facts and their rights regarding the Note (and Guaranty) when they executed the Amendments. The Ashers testified that they had no knowledge of the Guaranty until Fanuk initiated this action. As previously noted, the Ashers' rights as to their obligations on the Guaranty, which were unknown at the time they executed the Amendments on behalf of CFV, are a separate issue not relevant to the enforceability of the Note.

In 2007, before this action was filed, the Ashers, on behalf of CFV, signed the Amendments. Ronald Asher testified: "I understood [the amendments] to be a continuance of a note that we had gotten, you know, from the Walker family." Ronald Asher mistakenly presumed the property was security for the loan.

The Amendments the Ashers signed on behalf of CFV specifically reference the "Promissory Note dated June 6, 2005." The Ashers, having testified that they reviewed documents before signing them, were on inquiry notice to further investigate the terms of the Note. Their failure to make reasonable inquiries as principals of CFV to investigate

10

the terms of the Note, while accepting the benefits of the amendments to certain terms in the Note, constitutes ratification. (See *Volandri v. Hlobil* (1959) 170 Cal.App.2d 656, 659.) Thus, the evidence was not sufficient that CFV (through the Ashers) lacked full knowledge of the rights and obligations under the Note to support the trial court's factual finding. Accordingly, we reverse the judgment in favor of CFV and against Fanuk.

3. *Reversal of the Trial Court's Order Awarding Attorney Fees is Mandated*

In light of our conclusion that the judgment in favor of CFV must be reversed, the attorney fees awarded to CFV and the Ashers, collectively as the prevailing parties in this action, cannot stand and must be reconsidered on remand. In the interest of judicial efficiency, we resolve the issue of whether the Ashers are entitled to recover attorney fees as the prevailing party on the claims arising from the Guaranty.

4. *The Ashers are Entitled to Recover Attorney Fees under California Law*

Fanuk contends the Ashers are not entitled to recover attorney fees because the choice-of-law provision in the Guaranty invoking Alabama law is enforceable, the attorney fee provision is unilateral, and Alabama law does not provide for mutual reciprocity of a unilateral contractual attorney fee provision.[4] The trial court rejected a similar argument and applied California law. We conclude the trial court did not err.

The Guaranty, on which the Ashers remain the prevailing party, contains a unilateral attorney fee provision which states: "Guarantor agrees to pay reasonable attorney's fees and all other costs and expenses which may be incurred by Lender in the enforcement of this Guaranty." Such a one-sided attorney fee agreement is enforceable in Alabama. (See *Ex parte Odem* (Ala. 1988) 537 So.2d 919, 920.)

California law, however, "ensure[s] mutuality of remedy for attorney fee claims under contractual attorney fee provisions." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610.) Civil Code section 1717, subdivision (a) provides in pertinent part: "In any action

---

[4]     Neither party challenges the trial court's conclusion that the Guaranty is governed by a choice-of-law provision invoking Alabama law. Thus, we employ the analysis set forth in *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 465-466 *(Nedlloyd Lines).*

11

on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

     a.   Nedlloyd Lines*/Restatement Principles Applicable to Choice-of-Law Analysis*

     As we stated in *1-800-Got Junk? LLC v. Superior Court* (2010) 189 Cal.App.4th 500, 512-513, choice-of-law provisions are enforceable, unless grounds exist for not enforcing them.  (See *Nedlloyd Lines*, *supra*, 3 Cal.4th at pp. 464-466.)  "In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement [Second of Conflict of Laws,] section 187, which reflects a strong policy favoring enforcement of such provisions.  [¶]  . . . Restatement section 187, subdivision (2) sets forth the following standards:  '*The law of the state chosen by the parties to govern their contractual rights and duties will be applied*, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, *unless* either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the [parties'] choice, or [¶] (b) *application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.*' "  (*Id.* at pp. 464-465, italics added, fns. omitted.)  We are concerned here with the second exception (Rest. § 187, subd. (2)(b)) articulated in *Nedlloyd Lines* because Alabama, the chosen state, has a substantial relationship to the Note and Guaranty, as the loan proceeds were used to rehabilitate real property in that state.

     In *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, the California Supreme Court set forth the parties' respective burdens on a choice-of-law question as follows: "if the proponent of the clause [here, Fanuk] demonstrates that the

12

chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law, the parties' choice generally will be enforced *unless the other side can establish* both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." (*Id*. at p. 917, italics added.)

b. *Applying the* Nedlloyd Lines *Test*

Alabama law is contrary to a fundamental policy of California on the issue of mutual reciprocity of a unilateral contractual attorney fee provision. (See *ABF Capital Corp. v. Gore Properties Co.* (2005) 126 Cal.App.4th 204, 214, 217-219.) Civil Code section 1717, subdivision (a) represents a basic and fundamental policy choice by the state that nonreciprocal attorney fee provisions create reciprocal rights to such fees. (*ABF Capital Corp. v. Gore Properties Co.*, at pp. 217-219.)

California also has a materially greater interest in the subject of the litigation than Alabama. Aside from the location of the real property in Alabama, that state has no particularized interest in the Guaranty. California, however, maintains a substantial interest in regulating commercial transactions within its borders, ensuring access to courts for all those who contract in California. The Guaranty purportedly was executed in California, by California residents, and Fanuk sued California residents in a California court to enforce the Guaranty. California's interest in offering mutuality of remedies for its citizens is materially greater than Alabama's interest in allowing its citizens to freely contract concerning attorney's fees with respect to a contract entered into in California, and purportedly executed by California citizens.

In the third and final step of the *Nedlloyd Lines* test, we conclude that California law would apply in the first place, "under the rule of § 188" even in the absence of an effective choice of law by the parties. (*Nedlloyd Lines*, *supra*, 3 Cal.4th at p. 465.) Restatement Second of Conflict of Laws, section 188, subdivision (2) (Restatement) states: "(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: [¶] (a) the place of contracting, [¶] (b) the place of

13

negotiation of the contract, [¶] (c) the place of performance, [¶] (d) the location of the subject matter of the contract, and [¶] (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

Looking strictly at the factors listed in Restatement section 188, California law applies even in the absence of an effective choice-of-law provision. The place of contracting was in California, where the Ashers purportedly signed the Guaranty. Because it was proven at trial that the Ashers' signatures were forged on the Guaranty, and they testified having no knowledge of the Guaranty, it is unclear how any negotiations could have occurred in either California or Alabama. The Ashers are California citizens and Fanuk has invoked California as the forum for this litigation. Here, the particular issue is a procedural one, that is, the right to recover attorney fees, and California has a fundamental policy interest in ensuring reciprocity of a unilateral contractual attorney fee provision. While these factors appear to overlap the second requirement in the *Nedlloyd Lines* test, on balance, we conclude that California law would be the proper choice in the absence of an effective choice-of-law provision in the Guaranty. Thus, on the attorney fee issue, California law applies.

Our conclusion is consistent with two published cases reaching the same result (*ABF Capital Corp. v. Grove Properties Co.*, *supra*, at pp. 218-223; *Ribbens Intern., S.A. v. Transport Intern. Pool* (C.D.Cal. 1999) 47 F.Supp.2d 1117, 1121-1126), and inconsistent with another published case (*ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825). In *ABF Capital Corp. v. Berglass*, unlike here, there was no evidence of where the contract was executed or negotiated. (*Id*. at p. 838.) And, the only California contact was at the time the action was filed. (*Id*. at pp. 834, fn 1, 838-839.) Additionally, the *Berglass* court concluded that the law of the chosen state would have applied had the parties not included a choice-of-law provision in the contract. (*Id*. at p. 839.) Thus, *Berglass* is factually distinguishable.

In sum, based upon the *Nedlloyd Lines* test, an exception exists to prevent enforcement of the choice-of-law provision in the Guaranty with respect to recovery of attorney fees. Thus, the Ashers right to obtain attorney fees as the prevailing party on the

14

Guaranty is governed by Civil Code section 1717, subdivision (a). The amount of attorney fees awarded is subject to the discretion of the trial court on remand, and must be recalculated in light of our conclusion to reverse the judgment in favor of CFV.

5. *Fanuk's Appeal Challenging the Trial Court's Failure to Enter Default Judgment is Dismissed as Premature*

Fanuk contends that the trial court erred in not entering default judgments as to several defendants.[5] The only reference in the record to this issue is in Fanuk's closing argument briefs. The statement of decision omits any mention of this request. Fanuk also does not cite to the record to show it raised the omission in the trial court before judgment was entered.

Ordinarily, a party's failure to bring omissions or ambiguities in the statement of decision to the trial court's attention constitutes a waiver of the right to complain of such errors on appeal, and the appellate court will imply findings to support the judgment. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.) Here, however, we cannot imply findings against Fanuk based upon what appears to be the trial court's failure to address the issue either in the statement of decision or the judgment.

Moreover, even if we were to imply findings, our analysis necessarily would require determining whether there was sufficient evidence to support the trial court's decision not to enter default judgment. (See *Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17 [whether a finding is supported by substantial evidence is an issue of law that is never waived or forfeited on appeal].) The record provides no clue as to whether the trial court actually decided the issue for or against Fanuk, as the trial focused on CFV and the Ashers. As noted, Fanuk cites to no evidence presented during trial to support entry of default judgment as to the Defaulting Defendants. (See *Kim v.*

---

[5]     The clerk entered defaults, and Fanuk sought entry of default judgments against the following defendants:  (1) 200 MPH V, LLC; (2) TJM, LLC; (3) Two Monkeys I, LLC; (4) 7 Second I, LLC; (5) Larry M. Moniak; (6) Ellen G. Moniak; (7) Richard M. Moniak; (8) Bill Melton; (9) Paige Melton aka Jaclyn P. Melton; and (10) Bert Heck (hereafter, Defaulting Defendants).

*Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 272 ["[I]t is incumbent upon the plaintiff to *prove up* his damages, with actual evidence."].)

Here, the trial court entered judgment in favor of CFV and the Ashers, as all the issues between those defendants and Fanuk had been adjudicated even though the action remains pending against the Defaulting Defendants. (See *Oakland Raiders v. National Football League* (2001) 93 Cal.App.4th 572, 578; Code Civ. Proc., § 579.)

Citing *Call v. Alcan Pacific Co.* (1967) 251 Cal.App.2d 442, Fanuk contends the trial court erred because a several judgment could not be entered as the interests of CFV on the Note and the Ashers on the Guaranty are identical to the Defaulting Defendants. This argument is internally inconsistent with Fanuk's position on appeal. Fanuk does not challenge the judgment in favor of the Ashers on the Guaranty, but seeks judgment as to the remaining individual Defaulting Defendants liable on the Guaranty. Likewise, Fanuk seeks reversal of the judgment in favor of CFV based upon ratification arising from the Ashers' signatures on the Amendments, not liability on the Note itself. Liability on the Note, however, is the basis for Fanuk's request to enter default judgment against the defaulting limited liability companies. Thus, unlike the principal and surety at issue in *Call*, the legal issues involving the liability of the Defaulting Defendants are not necessarily inseparable from the issues resolved at trial. (*Id*. at p. 449, fn. 11.) Because there is no appealable judgment as to the Defaulting Defendants, that portion of the appeal is dismissed as premature.

16

DISPOSITION

The judgment in favor of defendant Cash Flow V, LLC is reversed, and the trial court is directed to enter judgment in favor of Fanuk Human Resources, Inc. The postjudgment order granting attorney fees to Cash Flow V, LLC, and Ronald D. Asher and Adriana L. Asher is reversed and remanded for the trial court to award attorney fees consistent with the views herein expressed. The purported appeal concerning the Defaulting Defendants is dismissed as premature. Each party appearing in this appeal to bear its own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.

17