Filed 3/21/16  Bank of America v. Lahave CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BANK OF AMERICA, N.A.,<br><br>     Plaintiff and Appellant,<br><br>  v.<br><br>DANNY LAHAVE et al.,<br><br>     Defendants and Respondents. | B253931, B256219<br><br>(Los Angeles County<br>Super. Ct. No. BC415243) |

APPEALS from orders of the Superior Court of Los Angeles County, Mary Ann Murphy and Frederick C. Shaller, Judges.  Affirmed.

Jeffer Mangels Butler & Mitchell, Robert B. Kaplan, Neil C. Erickson for Plaintiff and Appellant.

Fisher & Wolfe, David R. Fisher, Jeffrey R. Klein for Defendants and Respondents.

_____

Bank of America, National Association, a multinational corporation, and Danny Lahave, a California resident, are parties to a contract that (1) contains a unilateral attorney fee provision favoring Bank of America and (2) specifies the contract is to be interpreted according to New Mexico law. After Lahave prevailed in litigation, he sought and was awarded attorney fees under a reciprocity provision found in California law (Civ. Code, § 1717) but not New Mexico law. On appeal, Bank of America argues New Mexico law applies, under which no fees should be awarded.

For the reasons set forth below, we affirm.

## BACKGROUND

We relate a simplified version of the relevant financial transactions, omitting extraneous parties and half a dozen assignments, successions and assumption agreements. In essence, Lahave and Top Terraces, Inc., a California corporation (the guarantors), guaranteed the payment and performance of obligations set forth in a deed of trust note in favor of Bank of America. The obligor under the note was Market Center East Retail Property, Inc., a New Mexico corporation, and the note was secured by real property in New Mexico. Both the guaranty and note provided they were to be governed by and construed in accordance with New Mexico law. Under the note, if any sum payable was not paid by the fifth day of the month it was due, the borrower would be obligated to pay an additional amount equal to 5 percent of the unpaid sum.

The borrower failed to make a monthly payment in January 2009, and in April 2009 sought voluntary Chapter 11 bankruptcy protection (see 11 U.S.C. §§ 1101-1174) in New Mexico. The real property securing the note was ultimately sold in the bankruptcy proceedings, and Bank of America was paid the balance of principal and interest due under the note. One month later, in December 2009, Bank of America requested that the bankruptcy court further authorize payment of a late fee equal to 5 percent of the principal balance due when the borrower filed for bankruptcy. In August 2010, the bankruptcy court denied the request, finding a late fee consisting of 5 percent of the entire

principal balance, rather than merely of one monthly payment, would be an unenforceable penalty under New Mexico law. That decision has become final.

Meanwhile, Bank of America treated the bankruptcy as a triggering event obligating the guarantors for all payments due under the note, and on June 5, 2009, filed a complaint for breach of guaranty against the guarantors in the Los Angeles Superior Court. After the bankruptcy case in New Mexico was resolved, the parties in Los Angeles stipulated that the only remaining issue to be adjudicated was whether under New Mexico law the late fee found by the bankruptcy court to be unenforceable against the borrower was nevertheless enforceable against the guarantors. The parties stipulated the amount of any such fee, if enforceable, would be $377,438.82. Bank of America argued the fee was enforceable against the guarantors notwithstanding its unenforceability against the borrower because the guarantors, unlike the borrower, had waived any illegality defense, as follows:

The guaranty provided that the guarantors' obligations would "not be reduced, discharged or released because or by reason of any . . . claim or defense of Borrower," and guarantors waived any "common law, equitable, statutory or other rights" they might have as a result of "[t]he invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations." Specified waived illegalities included that the guaranteed obligations exceeded the amount permitted by law, violated applicable usury laws, or were otherwise uncollectible or unenforceable; that performance or repayment of the guaranteed obligations was illegal; or that the borrower had valid defenses against them. The guarantors agreed they would remain liable on the guaranteed obligations even if the borrower was found not liable for any reason.

In opposition to Bank of America's request for the late fee, the guarantors argued the guaranty's waiver was unenforceable because it violated New Mexico public policy.

The trial court agreed with Bank of America, found the late fee was enforceable against the guarantors under New Mexico law, and entered judgment for the bank in the amount of $377,438.82. We reversed, holding the guaranty waiver was unenforceable.

3

(*Bank of America, N.A. v. Lahave* (Mar. 26, 2013, B237360) [nonpub. opn.].)[1] That decision has become final.

On remand, the guarantors sought trial and appellate attorney fees in the combined amount of $389,702.95. Applying California law, the trial court granted the fees in two separate orders, finding "There is no New Mexico party to the assumed Guaranty, and the place of performance would be California, since that is where Plaintiff demanded payment." Bank of America appealed each order separately. We consolidated the appeals.

## DISCUSSION

### I.      Issue

Civil Code section 1717 provides in relevant part as follows: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." Section 1717 establishes a "mutuality of remedy when a contract makes recovery of attorney fees available only for one party." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1090-1091.)

Bank of America does not dispute that the guarantors would be entitled to attorney fees under the guaranty if Civil Code section 1717 applies. Instead, it contends Civil Code section 1717 has no application because the parties expressly agreed in the guaranty that New Mexico law would govern the contract. Under New Mexico law, which has no analog to Civil Code section 1717, the attorney fee provision would be applied as written, meaning guarantors would not be entitled to attorney fees.

---

[1] We take judicial notice of our opinion in *Bank of America, N.A. v. Lahave*, *supra*, B237360, and also of *Bank of America, N.A. v. Lahave* (June 26, 2013, B240826) nonpublished opinion, which reversed an award of postjudgment attorney fees to Bank of America. (Evid. Code, § 452.)

The issue is whether California or New Mexico law applies.

## II.    Principles of Choice-of-Law Analysis

California generally "follows a 'governmental interests' approach to choice of laws questions." (*Janzen v. Workers' Comp. Appeals Bd*. (1997) 61 Cal.App.4th 109, 115, fn. 3.)  Pursuant to this approach, the courts "must search to find the proper law to apply based upon the interests of the litigants and the involved states." (*Reich v. Purcell* (1967) 67 Cal.2d 551, 553.)  The courts give "special attention to the actual interests of the concerned states *in the resolution of the particular issue presented*." (*Kasel v. Remington Arms Co*. (1972) 24 Cal.App.3d 711, 730, italics added.)

When a contract contains a choice-of-law provision, California employs the analytical process found in the Restatement Second of Conflict of Laws (Restatement), section 187.  (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464-465 (*Nedlloyd*).)

Restatement, section 187, subdivision (2) provides:  "The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or [¶] (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

This approach requires "the court first to determine either:  (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law.  If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law.  If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental policy* of California.  If there is no such conflict, the court shall enforce the parties' choice of law.  If, however, there is a fundamental conflict with

5

California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue . . . .' (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy." (*Nedlloyd*, *supra*, 3 Cal.4th at p. 466, fns. omitted; *Guardian Savings & Loan Assn. v. MD Associates* (1998) 64 Cal.App.4th 309, 316-317.)

Here, the guaranty's choice-of-law provision elected to apply New Mexico law. We therefore undertake the Restatement analysis.

## III.    Application

A. *New Mexico Has No Substantial Relationship to the Parties or Transaction*

Bank of America is a multinational corporation headquartered in North Carolina. The guarantors reside in California. The guaranty was executed in Los Angeles and was presumably to be performed there. The only connections between New Mexico and the guaranty were that the obligor under the guaranteed promissory note was a New Mexico corporation and the note was secured by real property located in New Mexico. But we are aware of no reason, and Bank of America offers none, why New Mexico would be interested in a foreign guaranty of an admittedly domestic obligation. Bank of America argued below when applying for a writ of attachment that the guarantors "have little or no relationship with New Mexico," and the guaranty "is a separate and distinct obligation" from the promissory note. We agree.

Bank of America argues the guarantors had substantial *other* contacts with New Mexico regarding the underlying financial and property transactions, and filed two complaints there, one to enjoin Bank of America from obtaining a writ of attachment in this matter and the second for malicious prosecution of this matter. But the guarantors' tangential financial dealings in New Mexico are irrelevant to that state's interest in the guaranty, the only transaction at issue. And post-guaranty New Mexico litigation based

6

solely on California litigation can hardly generate a substantial New Mexico relationship with the guaranty itself.

We conclude New Mexico has insufficient connection with the parties or the guaranty to meet the "substantial relationship" test under *Nedlloyd*.

Bank of America argues that even if no substantial relationship exists between New Mexico and either the parties or the guaranty, the guarantors are barred by the doctrine of judicial estoppel from asserting lack of such a relationship because they made numerous judicial admissions in several venues that New Mexico law applies to the guaranty. We disagree.

As we stated in *ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, "The courts invoke judicial estoppel to prevent judicial fraud from a litigant's deceitful assertion of a position completely inconsistent with one previously asserted, thus compromising the integrity of the administration of justice by creating a risk of conflicting judicial determinations. [Citations.] The inconsistent position generally must be factual in nature. [Citation.] [¶] As a general rule, the court should apply the doctrine only when the party stating an inconsistent position succeeded in inducing a court to adopt the earlier position or to accept it as true. If the party did not succeed, then a later inconsistent position poses little risk of inconsistent judicial determinations and consequently introduces "'little threat to judicial integrity.'"" (*Id*. at p. 832.)

Here, Bank of America recites 14 instances where the guarantors asserted that the guaranty was entered into in New Mexico, that New Mexico law should govern it, or that California has no interest in it. But to the extent the guarantors argued that New Mexico law should govern or California has no interest, those are legal positions, not factual ones, and cannot form the basis for judicial estoppel.

In any event, Bank of America adduces no instance where the guarantors succeeded in inducing a court to adopt their position. Judicial estoppel applies only when "the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true)." (*MW Erectors, Inc. v. Niederhauser Ornamental &*

7

*Metal Works Co., Inc*. (2005) 36 Cal.4th 412, 422.) Bank of America argues the guarantors gained three "advantages" from their representations: They (1) succeeded in having attorney fees reduced from the amount Bank of America originally requested when it was the prevailing party; (2) succeeded in having a writ of attachment stayed and ultimately vacated; and (3) ultimately prevailed on appeal, all while arguing New Mexico law should apply to the guaranty. But simply prevailing in the contest of the day does not suffice. Bank of America adduces no instance where the court adopted the guarantors' position that New Mexico law should apply. For example, although the guarantors ultimately prevailed on appeal in *Bank of America, N.A. v. Lahave*, *supra*, B237360, they argued there, and we agreed, that New Mexico and California law were the same regarding waiver of illegality, and we relied on *California* law to hold that "a guarantor cannot waive the unenforceability of an illegal principal obligation." (*Id*. at p. \*23.) As for trial court rulings favoring the guarantors, many reasons may exist for a court to stay or vacate an attachment order or award less in attorney fees than a party demands, but few of these reasons—and on this record none —turn on choice of law. For example, the only explanation the trial court gave for vacating the writ of attachment was that the court "cannot find that plaintiff has established that it is likely to succeed as to the interest and or late fee amounts." Absent some indication that a court adopted a representation by the guarantors that New Mexico law applies, judicial estoppel does not bar their argument that California law should apply.

  B. *No Other Reasonable Basis Exists for the Parties' Choice of Law*

  The next question is whether a reasonable basis exists for the parties' choice of law. Bank of America, which ignores this element on appeal, offers no explanation why the parties inserted a New Mexico choice of law provision in the guaranty agreement, and we can discern none. Although the underlying promissory note concerned a loan made in New Mexico to a New Mexico resident, and was secured by real property located in New Mexico, no reasonable basis exists to apply New Mexico law to a guaranty agreement between foreign residents. As intimated above, the financial and property transactions

surrounding the guaranty involved several successors in interest, assignments, and assumption agreements, and at least one prior guarantor. But Bank of America adduces nothing in the record that would explain the choice of law.

Finding neither a substantial relationship between New Mexico and the parties or the guaranty, nor any other reasonable basis for the parties' choice of law, our inquiry ends, and we need not enforce the choice. (*Nedlloyd*, *supra*, 3 Cal.4th at p. 466.)

C. *Civil Code Section 1717 Represents a Fundamental Policy of California*

If, for the sake of argument, the guarantors were estopped from denying that New Mexico had a substantial relationship with them and/or the guaranty, or if some other reasonable basis existed for the parties' choice of law, we would nevertheless conclude California law applies because application of New Mexico law "would be contrary to a fundamental policy of" California, "which has a materially greater interest than the chosen state in the determination of the particular issue." (Restat., § 187, subd. (2).)

California has a fundamental policy concerning the mutuality of attorney fee provisions in contracts. Civil Code section 1717, subdivision (a) states that "[a]ttorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void." (Civ. Code, § 1717, subd. (a).) "'This language is mandatory, unavoidable and emphatic. Section 1717(a) is no default provision or gapfiller, subject to override by the parties. Rather, it represents a basic and fundamental policy choice by the state of California that nonreciprocal attorney's fees contractual provisions create reciprocal rights to such fees.'" (*ABF Capital Corp. v. Grove Properties* (2005) 126 Cal.App.4th 204, 217.) "'Section 1717(a) constitutes the statutorily expressed public policy of California, and, thus, under California's rules regarding enforcement of contractual choice of law provisions, if California has a materially greater interest in the subject of the litigation than the state chosen by the parties, section 1717(a) will be applied in lieu of the chosen

9

state's law. . . .'" (*Ibid*.) New Mexico law, which affords no reciprocity for attorney fees, conflicts with this fundamental policy of California.

   D.  *California Has a Materially Greater Interest than New Mexico in the Attorney Fee Award*

   The next question is whether California has a materially greater interest than New Mexico in the award of attorney fees in California litigation.  Here, Bank of America sued California residents in California.  "The interest of California in seeing its residents receive fair play with respect to attorney fees, when resort is made to the California courts, is a fundamental equitable policy of this state.  Because resort is made to the California courts, and implicates the equitable treatment of California citizens, California has a great material interest in the attorney fees issue—fees which are attributable to litigation in California."  (*ABF Capital Corp. v. Grove Properties*, *supra*, 126 Cal.App.4th at p. 220.)  This interest is materially greater than any interest New Mexico could have in assuring the enforcement of its law concerning attorney fees because here, the attorney fees are not being incurred as a result of any use of New Mexico courts.

   Relying on *Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, Bank of America argues different law may not be applied to different legal issues raised in a single contract.  Thus, if New Mexico law applies to some provisions of the guaranty, as guarantors have always argued, it must apply to the attorney fee provision as well.  The argument is without merit.  As stated above, in determining choice of law, California courts give "special attention to the actual interests of the concerned states in the resolution of the particular issue presented."  (*Kasel v. Remington Arms Co*., *supra*, 24 Cal.App.3d at p. 730.)  The question is whether California has a materially greater interest than New Mexico in the "particular issue" presented.  (Restat., § 187, subd. (2); *Nedlloyd*, *supra*, 3 Cal.4th at p. 466.)  We are compelled to apply different law to different legal issues raised in a single contract if to do so is the only way to comport with "this state's fundamental policy."  (*Nedlloyd*, *supra*, at p. 466.)

10

*Hughes Electronics Corp. v. Citibank Delaware* is not to the contrary. There, the issue was whether a California or New York limitations period applied to a dispute arising out of a banking relationship. The trial court enforced the parties' New York choice of law and applied New York's facial limitations period, but neglected to follow New York's "borrowing statute," which "required that each cause of action must be timely under both New York law and the law of the jurisdiction in which the claim arose." (*Hughes Electronics Corp. v. Citibank Delaware*, *supra*, 120 Cal.App.4th at p. 255.) The appellate court reversed, holding "a trial court may not choose to enforce some but not all of the applicable laws of [the chosen] jurisdiction." (*Id*. at p. 256.) *Hughes* therefore stands for the proposition that all applicable foreign laws must be applied to a particular issue, not that all issues must be subject to the same law.

E. *California Law would Apply in the Absence of an Effective Choice of Law Provision*

The final question under the Restatement analysis is whether California law would apply in the absence of an effective choice of law by the parties.

If a contract contains no choice-of-law provision, a California court will generally """"apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event [that party] must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it."' [Citations.] . . . [T]he foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California. . . . [I]f the relevant laws of each state are identical, there is no problem and the trial court may find California law applicable . . . . [Citations.] [¶] If, however, the trial court finds the laws are materially different, it must proceed to the second step and determine what interest, if any, each state has in having its own law applied to the case. [Citation.] Despite materially different laws, 'there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied.'" "Only if the trial court

11

determines that the laws are materially different *and* that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied. [Citations.] In making this comparative impairment analysis, the trial court must determine 'the relative commitment of the respective states to the laws involved' and consider 'the history and current status of the states' laws' and 'the function and purpose of those laws.' [Citation.] These rules apply whether the dispute arises out of contract or tort [citations], and *a separate conflict of laws inquiry must be made with respect to each issue in the case* [citations]." (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 919-920, italics added.)

Here, the laws of California and New Mexico on attorney fee reciprocity conflict, but New Mexico has no discernable interest in California litigation over a guaranty involving non-New Mexico residents that was entered into and was to be performed in California. Therefore, California law would apply.[2]

Bank of America urges us to reject the approach set forth in *ABF Capital Corp. v. Grove Properties*, *supra*, 126 Cal.App.4th 204, in which Division Two of the Fourth District applied California over New York law, and instead reaffirm our holding in *ABF Capital Corp. v. Berglass*, *supra*, 130 Cal.App.4th 825, where we applied New York law rather than California law on similar facts. But the result would be the same under either approach. In *Berglass* we distinguished *Grove Properties* and applied New York law in part because we did "not know where [the] defendant executed the contract or the parties negotiated the contract." (130 Cal.App.4th at p. 838.) But here, Lahave declared he

---

[2] The result would be the same under Restatement section 188, which provides: "In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: [¶] (a) the place of contracting, [¶] (b) the place of negotiation of the contract, [¶] (c) the place of performance, [¶] (d) the location of the subject matter of the contract, and [¶] (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." (Restat., § 188, subd. (2).)

executed the guaranty in Los Angeles, and the notary seal on the signature page bears him out. *Berglass* is further distinguishable in that there, the plaintiff resided in New York and the defendant was part of a New York partnership whose general partner was a New York corporation. "In other words, one party to the contract was a New York resident when its general partner executed the contract," and the record was silent as to the other party's residence when the contract was executed. (*Id*. at p. 834.) We held "[t]hat one of the parties resides in a foreign state gives the parties a reasonable ground for choosing that state's law." (*Ibid*.) No such ground appears here, where neither party to the guaranty was a New Mexico resident when the guaranty was executed.

## CONCLUSION

Pursuant to California's choice-of-law principles, California law applies to the guaranty notwithstanding the parties' election of New Mexico law. Under California law, the guaranty's attorney fee provision is reciprocal. (Civ. Code, § 1717.) Therefore, the trial courts were correct to award the guarantors their trial and appellate attorney fees.

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.

NOT TO BE PUBLISHED.

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

JOHNSON, J.

13